[No. 41920.    Department Two.    November 4, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. JUDY M. KNOWLES, *Appellant.*

*Henry Templeman,* for appellant (appointed counsel for appeal).

*Robert E. Schillberg, Prosecuting Attorney,* and *Bruce A. Keithly, Deputy,* for respondent.

HALE, J.—Defendant was convicted of grand larceny under an information charging that she obtained public assistance by means of fraud and deceit in violation of RCW 74.08.331. She appeals the judgment and sentence of not more than 15 years' imprisonment.

RCW 74.08.331 makes larceny by welfare fraud punishable as a felony:

> Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny . . .

The information read:

> That she, the said Judy M. Knowles, in the County of Snohomish, State of Washington, on or about July, 1968 *through April, 1969 did obtain public assistance by means of a willfully false statement or representation or impersonation, or willful failure to reveal a material fact, condition or circumstance affecting eligibility of need for*

assistance as required by law, or did willfully fail to promptly notify the county office in writing as required by law of any change in status in respect to resources, income, need or family composition . . . .

At the time of their divorce in 1965, the Knowleses had a family of four small children. The court awarded custody of the children to their mother, defendant here, and ordered the father, Kenneth Knox Knowles, to pay her $150 per month for their support. A fifth child was later born to defendant for which no support was ordered. On October 2, 1967, defendant Judy M. Knowles applied to the Snohomish County office of the State Department of Public Assistance for public assistance, listing in the application her five children as residents of her household. She was granted public assistance on the basis of the four older children living with and being dependent upon her, with allowance in the assistance award for the $150 per month which their father continued to pay.

On May 23, 1968, the defendant submitted to the Department of Public Assistance a review form requiring her to report any change in circumstances. She truthfully reported that the four older children were still residing with her as members of her household. October 26, 1968, defendant submitted another eligibility review form to the department again listing the four older children as living with her in her household. This information was false, for at that time they were living with their father in his home and maintained and supported by him.

The four Knowles children remained with their father for more than 10 months during which time he provided their support and maintenance, but during which interval he discontinued the $150 per month child support payments to defendant. Throughout this 10-month period, the Department of Public Assistance, unaware of the children's change in residence, continued to pay to the defendant by check $280.62 each month as a grant for the care of a family of six, consisting of the defendant, the four Knowles children and defendant's youngest child born after the di-

vorce. Had the department known that the four children were not members of defendant's household and that she was not supporting them, her assistance grant would have been $153.41 per month for a family of two instead of the $280.62 per month for a family of six.

Accordingly, in the 10-month period when four of her children were living with and being supported by their father, defendant received from the state about $1,263.10 more than she would have been entitled to receive under then existing public assistance laws, regulations and schedules.

Additional proof of fraud was presented through the testimony of a Department of Public Assistance caseworker to the effect that, when she interviewed the defendant at the latter's house in early 1969, defendant had indicated to her that the four children were living with her. This evidence was corroborated by the testimony of Kenneth Knox Knowles, father of the four children, who testified that, while the case was under investigation, defendant had come to him and asked him to tell the representatives from the State Department of Public Assistance that the four children had been living with and had been under her care, support and maintenance during the critical 10-month period.

Defendant first challenges the grand larceny statute relating to welfare fraud under which she was charged and convicted. RCW 74.08.331, she contends, is so vague and uncertain as to be unconstitutional. The principal test for vagueness and uncertainty in a criminal statute, we think, is whether a person of ordinary understanding upon a careful reading of the statute has reasonable notice of what is prohibited or enjoined by it. *Bouie v. Columbia*, 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697 (1964); *State v. Galbreath*, 69 Wn.2d 664, 419 P.2d 800 (1966); *State v. Dixon*, 78 Wn.2d 796, 479 P.2d 931 (1971). Expressing the test for vagueness and uncertainty another way, would an applicant for or recipient of public assistance, upon a careful

reading of RCW 74.08.331, understand what conduct is prohibited by it or what duty is enjoined upon him under criminal sanctions?

We think that the statute passes the test of reasonable certainty. An applicant for or recipient of public assistance, possessing ordinary understanding, should, we think, know that public assistance grants by their very nature depend on such things as *eligibility* (RCW 74.08.025), *need* (RCW 74.04.005(16)), *resources* (RCW 74.04.005(17)), and *income* (RCW 74.04.005(15)). A person of ordinary understanding should have little difficulty in comprehending that, in applying for or in receiving public assistance, the statute obliges him to speak and report the truth in supplying material information about himself and his family concerning such things as assets, resources, income, family circumstances, health, age, educational skills, training, financial expectancies and contingencies—in short to give to the department a truthful report of all conditions and circumstances "affecting eligibility of need for assistance." RCW 74.08.331.

A person of ordinary understanding would apprehend, we think, in reading RCW 74.08.331, that, in applying for or accepting public assistance, he must not knowingly and intentionally make any false statement concerning facts about his condition, circumstance or family; neither must he knowingly and willfully fail to reveal such facts to the department; and he must inform the department of any change in the recipient's status or condition affecting his eligibility. The statute thus makes it clear that, if while receiving public assistance there has been a substantial change in the resources, assets, income, family size, composition or dependency, or any substantial increase in the amount of money or property being received by the recipient from sources other than the Department of Public Assistance, or any change in the recipient's circumstances and condition which a person of ordinary understanding would understand to affect the recipient's need or eligibility for public assistance, then he is under an affirmative duty to

notify and report to the department such change in circumstances, conditions and income.

The criminal law does not exist in a vacuum. Whether the prohibited behavior is found in that broad classification sometimes described as common-law crimes or arises from legislation affecting business, commerce, traffic, labor, taxation, the maintenance and protection of public property, health, safety and welfare, or a multitude of other governmentally regulated activities designed not only to prohibit certain prescribed conduct but to enjoin affirmative conduct as well, the law creates necessarily what Holmes, J., in *Nash v. United States*, 229 U.S. 373, 57 L. Ed. 1232, 33 S. Ct. 780 (1913), referred to as a social duty. Stated another way, when one participates in, becomes a part of, or by operation of law is subject to a particular statute which includes provisions imposing criminal or penal sanctions, he incurs a social as well as a legal duty to ascertain what conduct is required of him. And if the statute is so phrased that a person of ordinary understanding can be said to comprehend from its language what is prohibited and what is required, it is not unconstitutionally vague or uncertain.

There is no precise and definitive formula prescribed either in the constitution or by common law for the drafting of criminal statutes. They may but need not be couched in terms of legal art; they need not achieve any particular degree of technical perfection; nor must they be drafted by lawyers. All that is constitutionally required to meet the tests of vagueness and uncertainty is that a person of ordinary understanding, after a careful and thoughtful reading of it, could be said to understand the statute and know what it prohibits or enjoins. RCW 74.08.331, we think, meets this standard of certainty. *See Seattle v. Jones*, 3 Wn. App. 431, 475 P.2d 790 (1970), *review granted*, 78 Wn.2d 992 (1971), this court *affirming*, 79 Wn.2d 626, 488 P.2d 750 (1971), where the court properly overruled the challenges of constitutionality to Seattle City Code § 12.49.010.

Defendant assigns error to the overruling of her

pretrial motion to have the information made more definite and certain—a motion she took no action whatever to have argued and determined before trial. Motions to make an information more definite and certain are addressed to the sound discretion of the trial court. *State v. Thomas,* 73 Wn.2d 729, 440 P.2d 488 (1968). The burden of having a pretrial motion heard and presented for disposition before trial falls upon the moving party. Unless the movant takes the procedural steps essential to bring the matter on for timely argument and disposition, the pretrial motion has little vitality of its own for most any paper can be lawfully filed with the clerk of court. If the movant does not note the motion for hearing or proceed otherwise to have it heard, neither the opposing party nor the court will know whether it has been filed in earnest, is merely perfunctory, is frivolous or dilatory, or has been abandoned or withdrawn. Accordingly, when the movant does not take timely steps to bring his pretrial motion before the court for hearing and disposition prior to trial, it is not error for the court to ignore it. Defendant, having failed to bring the matter on for hearing and determination well in advance of trial and there being no showing in the record demonstrating how or why the information was so indefinite and uncertain that defendant was unable to prepare her defense to it, we think that the trial court properly denied the motion raised at trial.

The record, moreover, shows no denial of due process of law in overruling the motion. As earlier observed, the statute was sufficiently explicit to give defendant adequate notice of the charges. She is presumed to have had further notice of their nature from the application and review forms which she herself executed and delivered to the department in establishing and perpetuating her eligibility for public assistance. The questions answered by her in these forms related to family composition, assets, resources and expenses, and one of these forms filled in and signed by her May 23, 1968, contained an explicit promise under penalty of perjury not only that the information she gave was

true but that she would report any change in her economic status or circumstance.[1] A preliminary hearing was held in this case, and the accused, if she were then in doubt, had opportunity to inquire as to the nature of the charges against her. ·

■ Unless the record discloses that the information is so indefinite and uncertain that the accused cannot ascertain the nature of the charges and will thus be unable to prepare a defense to them, an information phrased in the language of the statute is usually deemed sufficient. Couched as it was in the language of the statute and ·there being no affirmative showing in the record that defendant was not sufficiently informed of the nature of the charges so as to ·be able ·to defend against them, this information was ·and should be held sufficient. *State v. Thomas,* 73 Wn.2d 729, 440 P.2d 488 (1968); *State v. Moser,* 41 Wn.2d 29, 246 P.2d 1101 (1952). The trial court did not, therefore, abuse its discretion in denying defendant's motion made at trial to require that the information be made more definite and certain. *State v. Thomas, supra.*

Defendant contends that RCW 74.08.331 unconstitutionally required her to file self-incriminating statements. Defendant says that, in order to obtain and retain the public assistance grant, she was forced to make statements and reports which compelled her to incriminate herself and that, therefore, the applications and statements themselves were extracted from her under an unconstitutional compulsion. She cites *Leary v. United States,* 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969); *Baggett v. Bullitt,* 377 U.S. 360, 12 L. Ed. 2d 377, 84 S. Ct. 1316 (1964); *Hoffman v. United*

---

[1]Statement of Resources, May 23, 1968 (exhibit 1), states: "DECLARATION (Do Not Sign Until You Have Read Below) I declare under the penalties of perjury that this statement has been examined by me, and to the best of my knowledge and belief is true, correct and complete. I further declare that I will promptly report in writing to the county office of the State Department of Public Assistance all facts regarding any income, resources or property received by me and/or my dependents, and any change of circumstances or status whatever of myself and/or dependents for whom I have applied for assistance. Date *May 23, 1968* [Signed] *Judith M. Knowles* Signature of Applicant."

*States*, 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814 (1951); *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 15 L. Ed. 2d 165, 86 S. Ct. 194 (1965), and other cases. None of the cases cited do we find applicable here.

██ We do not think that government—whether it be state, municipal or federal—is prohibited by the constitutions from requiring truthful reports and honest claims from everyone doing business with or participating in transactions connected with their performing their constitutional functions. All branches of government, their subordinate organs and agencies act for and on behalf of the people in carrying out their constitutional and statutory duties. Functioning as they do for and on behalf of the people, governmental agencies not only should expect but are under a duty to demand the truth from those with whom they must deal. It would invite the grossest forms of favoritism if not downright corruption should the various organs and agencies of government in a democratic society have the power either to waive the truth or to refuse to demand it.

To first decide that one who seeks certain benefits, privileges, licenses or certificates of status from a governmental agency must supply the agency with truthful and honest information under criminal sanctions and then conclude that under the constitutional privileges against compulsory self-incrimination the applicant in furnishing the information is somehow reserving a constitutional right knowingly to supply false and deceptive information represents a kind of specious circular reasoning leading to a manifest absurdity. If we bring the defendant's reasoning full circle, *reductio ad absurdum*, the government cannot constitutionally demand the truth of anyone. The answer to this is that, even though one must supply the information in order to obtain the benefit, privilege or certificate of status, he is under no advance compulsion to incriminate himself. He is compelled to do no more than speak and write the truth as the applicant honestly knows the truth.

What defendant is seeking here is not freedom from com-

pulsory self-incrimination, but actually freedom from the obligation to tell the truth in her transactions with a governmental agency which is acting for her and for all of the people of the state. Defendant's contentions concerning self-incrimination are, therefore, untenable and were, we think, fully discussed and answered in *In re Johnson,* 71 Wn.2d 245, 427 P.2d 968 (1967), a rationale to which we adhere.

The remaining assignments of error we find to be without substance or merit.

Affirmed.

HAMILTON, C.J., ROSELLINI, SHARP, and WRIGHT, JJ., concur.