365 So.2d 157 (1978)
STATE of Florida, Appellant,
v.
Jorge A. RODRIQUEZ, Appellee.
STATE of Florida, Appellant,
v.
Julio A. MELENDEZ, Appellee.
STATE of Florida, Appellant,
v.
Eula Mae SHERROD, Appellee.
STATE of Florida, Appellant,
v.
John W. HARRIS, Appellee.
STATE of Florida, Appellant,
v.
Johnny B. SMITH, Appellee.
STATE of Florida, Appellant,
v.
Bessie L. THOMAS, Appellee.
STATE of Florida, Appellant,
v.
Eddie HUMPHRIES, Appellee.
STATE of Florida, Appellant,
v.
Bessie S. SHORTER, Appellee.
STATE of Florida, Appellant,
v.
Lester BENNETT, Appellee.
Nos. 52269, 52431, 53129-53135.
Supreme Court of Florida.
November 22, 1978.
*158 Robert L. Shevin, Atty. Gen., Glenn H. Mitchell, West Palm Beach, and Martha J. Cook and William I. Munsey, Jr., Tampa, Asst. Attys. Gen., and Steven C. Henry, Asst. State's Atty., St. Petersburg, for appellant.
Richard L. Jorandby, Public Defender, and James R. Merola, Asst. Public Defender, West Palm Beach, for Rodriquez.
Jose G. Rodriguez of Montgomery, Lytal, Reiter, Denney & Searcy, West Palm Beach, for Melendez.
B. Robert Ohle, St. Petersburg, for Sherrod.
Donald R. Odom of Williams & Milton, St. Petersburg, for Harris.
Joseph S. Rodriguez, St. Petersburg, for Smith.
Aubrey O. Dicus, Jr., St. Petersburg, for Thomas.
B. Robert Ohle, St. Petersburg, for Humphries and Shorter.
Larry G. Rightmyer, St. Petersburg, for Bennett.
ALDERMAN, Justice.
These consolidated cases are before us on direct appeals by the State from orders of the Circuit Court of Palm Beach County and the County Court of Pinellas County. The various defendants were charged with violation of Section 409.325(2)(a), Florida Statutes (Supp. 1976), which provides in pertinent part that "[a]ny person who knowingly: (a) [u]ses, transfers, acquires, traffics, alters, forges, or possesses ... a food stamp ... in any manner not authorized by law is guilty of a crime ... [Emphasis added.]"[1] The trial courts dismissed the charges against the defendants because they found the language "in any manner not authorized by law" to be unconstitutionally vague. We conclude that Section 409.325(2)(a) is not unconstitutional, and we reverse.
Legislative enactments are presumed valid. When reasonably possible and consistent with the protection of constitutional rights, this Court will resolve all doubts as to the validity of a statute in favor of its constitutionality. Department *159 of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976). The test to determine whether a statute is unconstitutionally vague is whether men of common understanding and intelligence must necessarily guess at its meaning. To meet the constitutional challenge of vagueness, a statute must convey a sufficiently definite warning as to what conduct is proscribed. Zachary v. State, 269 So.2d 669 (Fla. 1972).
The defendants argue that the statute is vague because it does not expressly delineate what acts are prohibited or in what manner a food stamp may be used, and they also assert that the phrase "not authorized by law" has already been tested for vagueness in Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102 (1947), wherein this Court decided that Chapter 22761, Acts of 1945, was unconstitutionally vague. The statute in Locklin provided in part:
Section 1. That it shall be unlawful for any person to commit any act under color of authority as an officer, agent or employee of the United States government, State of Florida, or any political subdivision thereof when such act is not authorized by law; or to intimidate or otherwise by color of authority cause any other person to release information or allow inspection of records or extend a privilege not required by law.
Therein this Court determined;
Under the provisions of this Act an officer or employee is just as amenable to prosecution for an act done in good faith, when that act is not specifically authorized by law, as he would be for the commission of an act done with evil intent and wilfully done in violation of law... [Emphasis supplied.]
Locklin is distinguishable from the case now before us in that the statute involved in Locklin was broader than Section 409.325(2)(a) because it prohibited a person from committing "any act under color or authority as an officer ... when such act is not authorized by law." In the present food stamp cases, however, because of the peculiar nature of the food stamp program, because it is a federal program, and because Chapter 409 gives notice that it is a federal program with federal regulations, we conclude that the Legislature, by the use of the language "not authorized by law," means not authorized by state and federal food stamp law.
It is a fundamental rule of statutory construction that the entire statute under consideration must be considered in determining legislative intent. Effect must be given to every part of the section and every part of the statute as a whole. The Court will view the entire statute to determine legislative intent. State v. Hayles, 240 So.2d 1 (Fla. 1970). Implicit in Section 409.325(2)(a), when read in conjunction with the other sections of Chapter 409, is the fact that the words "in any manner not authorized by law" refer to state and federal food stamp law. For example, Section 409.275 sets forth that the food stamp program is authorized expressly by the Congress of the United States and is administered by the Department of Agriculture. Section 409.026 provides that the Department of Health and Rehabilitative Services shall receive and distribute food stamps donated by the United States and promulgate regulations pertaining thereto. Section 409.325(2)(a), when read in conjunction with Sections 409.275 and 409.026, is sufficiently definite to give reasonable notice that federal food stamp legislation and United States Department of Agriculture administrative regulations apply.
Fla. Admin. Code Rule 10C-3.16 provides:
The Food Stamp Program is administered according to rules and regulations established by Congress and the U.S. Department of Agriculture.
7 U.S.C. § 2015(b) provided:
Coupons issued to eligible households shall be used by them only to purchase food in retail food stores which have been approved for participation in the food stamps program at prices prevailing in such stores... .
7 U.S.C. § 2012(b) defined "food" to mean:
any food or food product for human consumption except alcoholic beverages, tobacco, those foods which are identified on the package as being imported, and meat and meat products which are imported.
*160 Section 409.325(2)(a) is sufficiently definite to inform the defendants that their conduct in selling non-food items for food stamps was proscribed.
Upholding the constitutional validity of the Washington welfare fraud statute against an attack of vagueness, the Supreme Court of Washington reasoned that applicants or recipients of welfare assistance who possess ordinary intelligence and understanding know that, by their very nature, public assistance grants depend on eligibility, need, resource and income, and these persons should know that, in applying for public assistance, they are required by statute to report the truth in supplying material information. State v. Knowles, 79 Wash.2d 835, 490 P.2d 113 (1971). Therein, the Court emphasized:
[W]hen one participates in, becomes a part of, or by operation of law is subject to a particular statute which includes provisions imposing criminal or penal sanctions, he incurs a social as well as a legal duty to ascertain what conduct is required of him. And if the statute is so phrased that a person of ordinary understanding can be said to comprehend from its language what is prohibited and what is required, it is not unconstitutionally vague or uncertain.
490 P.2d at 116.
Defendants additionally argue that, if this Court holds that the phrase "in any manner not authorized by law" refers to state and federal food stamp law, then Section 409.325(2)(a) constitutes an unlawful delegation of legislative authority. The State responds that it is well-settled by case law that the Legislature may adopt provisions of federal statutes and administrative rules that are in existence and in effect at the time the legislation is enacted.
In Florida Industrial Commission v. State, 155 Fla. 772, 21 So.2d 599 (1945), we held that the Legislature may approve and adopt provisions of federal statutes and administrative rules made by federal administrative bodies, which provisions are in existence and in effect at the time the Legislature acts. We went on to say, however, that to adopt in advance any federal act or ruling of any federal administrative body which may be adopted in the future would amount to an unlawful delegation of legislative authority. See also Freimuth v. State, 272 So.2d 473 (Fla. 1972).
More recently, in Department of Legal Affairs v. Rogers, supra, wherein the "Little FTC Act" was challenged upon several grounds, one of which being that the Legislature intended to incorporate future holdings of a federal administrative body, this Court stated:
Another aspect of the issue of delegation of legislative authority concerns the question of whether the legislature by the subject act intended to incorporate future (subsequent to the effective date of the statute) decisions of the Federal Trade Commission and federal court decisions. To preserve the constitutional validity of the act, we would have to say that the legislative enactment intended only decisions made prior to its enactment. [Citations omitted.]
Since the Legislature is presumed to have enacted a valid and constitutional law and since statutes are to be construed, when reasonably possible and consistent with protection of constitutional rights, in such a manner so as to avoid conflict with the Constitution, we conclude that the Legislature intended to incorporate federal law and regulations in effect at the time Section 409.325(2)(a) was enacted.
The incorporation of only the federal law in effect at the time of the enactment of Section 409.325 may appear unworkable because changes in the federal law would not take effect in Florida. The Legislature, however, to avoid this problem, may update Chapter 409 each year, as they update Florida's corporate income tax statute by bringing forward the Internal Revenue Code each year. See Section 220.03(1)(h), Florida Statutes (1977).[2]
Accordingly, since we determine that Section 409.325(2)(a) is constitutional, we reverse *161 the orders of the Circuit Court of Palm Beach County and the County Court of Pinellas County and remand these cases for further proceedings consistent herewith.
It is so ordered.
ENGLAND, C.J., and BOYD and OVERTON, JJ., concur.
SUNDBERG, J., dissents with an opinion, with which ADKINS and HATCHETT, JJ., concur.
SUNDBERG, Justice, dissenting.
Although I cannot be absolutely sure of it, I believe that a majority of the Court today has potentially sanctioned an enactment by the Legislature which would make unlawful as a discrete crime "the doing of any and all acts in any manner not authorized by law." It could appropriately be entitled the "Omnibus Prevention of Unlawful Conduct Act." Of course, conduct not authorized by law is not limited to criminal conduct but includes any act in contravention of the common law or statute, civil or criminal. To my mind, there is little difference between my hypothetical "Omnibus Prevention of Unlawful Conduct Act" and the provision here under consideration. This statute does nothing more than to state that it shall be unlawful to act in any manner not authorized by law and then provides a criminal sanction.
Notwithstanding the fact that legislative acts are presumed valid and that all doubts respecting the validity of a statute will, when reasonably possible, be resolved in favor of its constitutionality, nonetheless, a statute, particularly a penal statute, must be definite to be valid. Locklin v. Pridgeon, 158 Fla. 737, 740, 30 So.2d 102, 103 (1947). In addition, a statute may not prohibit the doing of an act in terms so vague that men of common understanding must necessarily guess as to its meaning. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Linville v. State, 359 So.2d 450 (Fla. 1978); D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977).
In Locklin v. Pridgeon, supra, this Court found unconstitutionally vague a statute prohibiting unlawful conduct by state and federal officers. The statute provided, "it shall be unlawful for any person to commit any act under color of authority as an officer ... when such act is not authorized by law ... ." (Emphasis supplied.) Such language, the Court found, was so uncertain that men of common intelligence had to guess as to its meaning and could have differed as to the conduct it prohibited. The language in Section 409.325(2)(a), Florida Statutes (Supp. 1976), is strikingly similar to the Locklin statute and provides no greater clarity.
The requirement of Section 409.325(2)(a) that the unauthorized conduct be done "knowingly" does not salvage the provision. In the absence of an express delineation of the acts prohibited, or a specific cross-reference to other statutes, a person who knowingly possesses or transfers food stamps cannot be certain that he does not do so in a "manner not authorized by law."
The majority asserts that the deficiencies found in the statute invalidated in Locklin v. Pridgeon are alleviated by reference to the entire statute of which Section 409.325(2)(a) is a part. To the contrary, I conclude that more precise definition of the conduct prohibited by Section 409.325(2)(a) is not provided by reference to other provisions in Chapter 409. Rather, Sections 409.026 and 409.275, cited by the State as lending meaning to Section 409.325(2)(a), do nothing more than establish that the food stamp program is federally administered, with local administration vested in a state agency. By contrast, the federal statute prohibiting unauthorized use, transfer, acquisition, alteration, or possession of food stamps specifically refers to acts committed in a manner not authorized by other provisions of the chapter dealing with the federal food stamp program and the regulations issued pursuant to that chapter.[1] Though *162 not itself delineating the acts prohibited, the federal statute precisely defines the prohibited conduct by reference to a particular chapter of federal law. Similarly, California has defined the prohibited use and transfer of food stamps by specific reference to acts committed in a manner unauthorized by Title 7 U.S.C.A. § 2023(b). Section 409.325(2)(a), Florida Statutes (Supp. 1976), on the other hand, refers only to acts committed "in a manner unauthorized by law," without informing men of common understanding which laws are applicable.
If, as it is argued by the State and accepted by the majority, the statute incorporates federal food stamp statutes and regulations, the conduct which is prohibited must reflect changes in federal law. This is so because, as part of a federal program, the Florida food stamp program must necessarily conform to amendments made at the federal level. Where an enactment incorporates by reference other legislation and regulations, certain fundamental rules of statutory construction are applied to determine the intent of the Legislature with respect to the scope of the incorporated provisions. When a statute incorporates by reference the provisions of general law on a particular subject, the Legislature is deemed to have intended that future amendments and modifications to the general law referred to become a part of the adopting statute. See Reino v. State, 352 So.2d 853 (Fla. 1977); Williams v. State ex rel. Newberger, 100 Fla. 1567, 125 So. 358 (1930); State v. Smith, 189 So.2d 846 (Fla. 4th DCA 1966). In contrast, when the Legislature enacts a law which incorporates the provisions of a specific statute or section of a statute, it has expressed an intent that any subsequent amendment or repeal of the adopted provisions leave the adopting statute unaffected. See Overstreet v. Blum, 227 So.2d 197 (Fla. 1969); Williams v. State ex rel. Newberger, supra. Application of the foregoing principles of statutory construction reveals that Section 409.325(2)(a), which prohibits acts committed "in a manner unauthorized by law," refers at best to the general law on the subject of impermissible use of food stamps. Consequently, our Legislature is deemed to have intended that Section 409.325(2)(a) embody not only the general law in effect on the date of its enactment, but also amendments to and modifications of that general law effected subsequent to the date of the statute's enactment. Because it is an unlawful delegation of legislative authority for our Legislature to enact a statute which incorporates federal legislation and regulations which will arise in the future, State v. Camil, 279 So.2d 832 (Fla. 1973), Friemuth v. State, 272 So.2d 473 (Fla. 1972), Section 409.325(2)(a), Florida Statutes (Supp. 1976), would be unconstitutional on this count.
It is apparent that in concluding that Section 409.325(2)(a) incorporates only existing federal laws and regulations, the majority has misapplied these basic principles of statutory construction in determining the intent of our Legislature and, consequently, has erroneously found that the enactment is constitutional. The error in the majority's construction of Section 409.325(2)(a) is further evidenced by the absolute unworkability of the statute as construed. In view of the total dependency of this State's role upon the actions of Congress and the United States Department of Agriculture in promulgating and administering a federal food stamp program, it is inconceivable that the Legislature intended to adopt only the federal statutes and regulations on the subject in existence as of the date of the enactment of Section 409.325(2)(a). What Congress or the Department of Agriculture authorizes today may be rescinded by those *163 bodies tomorrow or vice versa. To assert that an annual updating of Chapter 409 by the Legislature resolves any problems inherent in "freezing" particular federal statutes and regulations into our act fails to take into account that distribution of food stamps is a day-by-day process which could be jeopardized for Florida recipients by the time lag between action by Congress or its agencies and action by our Legislature. This "time lag" would result in the Florida food stamp program failing to promptly conform to amendments made at the federal level, as required.
Finally, the majority relies upon State v. Knowles, 79 Wash.2d 835, 490 P.2d 113 (1971), as support for the conclusion that the statute in question here is not vulnerable to an attack of vagueness. However, the Washington statute there under review does not resemble at all Section 409.325(2)(a), Florida Statutes (Supp. 1976). The operative language of the Washington statute as set out by that court was:
Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny * * *.
490 P.2d at 114.
The Washington court quite reasonably concluded that the foregoing provisions of its statute were sufficiently definite to convey to a person of ordinary understanding:
[T]hat, in applying for or accepting public assistance, he must not knowingly and intentionally make any false statement concerning facts about his condition, circumstance or family; neither must he knowingly and willfully fail to reveal such facts to the departments; and he must inform the department of any change in the recipient's status or condition affecting his eligibility. The statute thus makes it clear that, if while receiving public assistance there has been a substantial change in the resources, assets, income, family size, composition or dependency, or any substantial increase in the amount of money or property being received by the recipient from sources other than the Department of Public Assistance, or any change in the recipient's circumstances and condition which a person of ordinary understanding would understand to affect the recipient's need or eligibility for public assistance, then he is under an affirmative duty to notify and report to the department such change in circumstances, conditions and income.
490 P.2d at 115-116.
If the provisions of Section 409.325(2)(a) spoke with the clarity of the Washington statute, I would have no quarrel with the holding of the majority opinion. However, they clearly do not. I am not sure that a "Philadelphia lawyer" would apprehend the extent of what is proscribed by Section 409.325(2)(a), Florida Statutes (Supp. 1976), but I am certain that a man of common intelligence and understanding cannot.
When the facial validity of a statute is assailed, as here, it makes no difference that the particular acts with which the several appellants were charged could properly be proscribed by a statute which defined the prohibited conduct with the requisite specificity. The test is whether the language employed is so vague and indefinite that a person of common intelligence must speculate about its meaning and be subjected to arrest and punishment if the guess is wrong. State v. Wershow, 343 So.2d 605 (Fla. 1977).
*164 We are all offended by welfare fraud because it constitutes cheating upon the largess of a socially conscious society. Nonetheless, the setting in which a penal statute attempts to operate cannot justify cutting constitutional corners. Since I believe the statute under review does just that, I am compelled to dissent. I would affirm the orders of the trial courts of Palm Beach and Pinellas Counties finding Section 409.325(2)(a), Florida Statutes (Supp. 1976), unconstitutional.
ADKINS and HATCHETT, JJ., concur.
NOTES
[1] Defendant Rodriquez was charged with knowingly selling a.22 caliber revolver for $240 worth of United States Department of Agriculture food stamps. Defendant Melendez was charged with purchasing $1,000 worth of food stamps from another individual for $625. Defendants Sherrod, Harris, Smith, Shorter, Humphries, Thomas and Bennett were each charged separately with selling non-food items in exchange for United States government food stamps.
[2] Chapters 78-58, 77-402, 76-173, 75-293, 74-324, 73-321, and 72-278, Laws of Florida.
[1] 7 U.S.C.A. § 2023(b). This provision provides in full:

"Whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization to purchase cards in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons or authorization to purchase cards are of the value of $100 or more, be guilty of a felony and shall, upon conviction thereof, be fined not more than $10,000 or imprisoned for not more than five years or both, or, if such coupons or authorization to purchase cards are of a value of less than $100, shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not more than $5,000 or imprisoned for not more than one year, or both."
The federal statute was upheld against a void for vagueness attack in United States v. Goyette, 458 F.2d 992 (9th Cir.1972).