[No. 47123. En Banc. December 11, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. NANCY ANN ERMERT, *Petitioner.*

*Richard W. Swanson,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Christopher A. Washington, Deputy,* for respondent.

*Randy Beitel, Patrick H. McIntyre,* and *Gerald R. Tarutis* on behalf of Peoples Welfare Rights Organization, amicus curiae.

HOROWITZ, J.—This case concerns a prosecution for welfare fraud pursuant to RCW 74.08.331. As set forth below, it is clear that the facts elicited at trial of this case would not support a conviction under RCW 74.08.331. We therefore reverse the defendant's conviction.

Defendant Nancy Ann Ermert first applied for public assistance on October 27, 1971. On application, she signed a "rights and responsibilities form" that stated she must promptly notify the Department of Social and Health Services (DSHS) in writing should she have any change of income or resources.

Defendant thereafter began receiving public assistance. She was required to fill out eligibility review forms approximately every 6 months to continue receiving assistance. Five of these forms were introduced at trial; on each, Ms. Ermert's signature appeared under this statement:

> I understand that it is my duty to report immediately to the local office any changes in my income, resources, or living arrangements.

The form does not explain the meaning of the terms "income" and "resources" and there was no evidence that Ms. Ermert was ever advised of their meanings. There is no evidence that she was aware that a "resource limit" was placed on public assistance by DSHS that excluded from aid individuals in Ms. Ermert's class with assets in excess of $1,500.

Ms. Ermert testified at trial that she was not aware of the resource limit.

On November 7, 1973, while still receiving public assistance, Ms. Ermert set up a trust savings account for her son. Her sister was named as trustee. Ms. Ermert testified that she set up the account in her sister's name, rather than her own, to make it difficult for her to withdraw funds from the account. She acknowledged that she was saving for a car or house. Between November 1973 and August 1975 a little less than $1,400 was put in the account. Ms. Ermert testified that all of the funds were saved from public assistance and that she had no other source of income. Ms. Ermert was receiving several types of public assistance during this time period. Other witnesses testified that the defendant was a good money manager, very frugal, and that she disliked purchasing "on time." The State presented testimony of public assistance workers stating that acquiring savings on the income provided by public assistance was unlikely, but presented no evidence that Ms. Ermert's savings had actually arisen from another source.

Ms. Ermert never voluntarily revealed the existence of the trust account to DSHS. On eligibility review forms, she gave no response to the question regarding "money held for you by others."

On August 27, 1975, Ms. Ermert caused the trust account to be closed. She used the funds as partial payment for a new Toyota. Other sources of the purchase price included $500 from trade–in of her old car, $500 which she testified she saved in 2 months before delivery of the automobile, and $1,200 in a bank loan. Ms. Ermert stated that she paid the bank loan balance with funds borrowed from friends in March 1976. On an eligibility review form completed July 1, 1976, Ms. Ermert revealed her ownership of the vehicle but claimed $1,500 was still owed on the Toyota.

During the summer of 1976 DSHS received an anonymous complaint that Ms. Ermert had recently purchased a new automobile. After investigation, Ms. Ermert was

charged with grand larceny by welfare fraud pursuant to RCW 74.08.331.

Under WAC 388-29-430, Ms. Ermert and her family would have been precluded by DSHS's "resource limit" from receiving public assistance after accumulating cash savings of more than $425, as she did, or by owning equity in the automobile greater than $1,500, which she had. Ms. Ermert testified she did not reveal the existence of the trust account, however, because she did not consider it "income" or "resources" since it had been accumulated only from her public assistance payments.

The trial transcripts in this case leave the impression that the defense was undertaken with little preparation by Ms. Ermert's appointed counsel. Answers to defense questions often unnecessarily aided the State. Objections were poorly conceived, documented, and argued. The defense's proposed instructions were likewise badly drafted and the basis for arguably justifiable instructions not indicated. Thus, defendant's present counsel was hampered on appeal by the failure at trial to adequately preserve error for review.

A review of the facts presented at trial in light of the provisions of RCW 74.08.331 convinces us, however, that under no circumstance could Ms. Ermert have been convicted of this crime. There has simply been no evidence presented by the State that could, even if uncontroverted, justify her conviction. We thus examine this substantive failure of proof because it demonstrates why trial counsel's failure to adequately preserve error for review violated defendant's constitutional rights.

## I
## FAILURE TO PROVE ELEMENTS OF CRIME

Ms. Ermert was convicted of welfare fraud under RCW 74.08.331, which provides:

Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance

affecting eligibility of need for assistance . . . as required by law, or a wilful failure to promptly notify . . . as required by law or [of] any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance . . . shall be guilty of grand larceny . . .

Defendant contends that there was simply no evidence upon which to convict her because she had not failed to reveal any information "required by law." *See State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976), in which we refused to consider for the first time on appeal a welfare fraud instruction on the basis that the instruction did not set out disclosures "required by law" because the facts which the defendant in that case had failed to reveal all involved "income or resources" she was "required by law" to reveal.

▉▉ In *State v. Walters*, 8 Wn. App. 706, 508 P.2d 1390 (1973), the Court of Appeals overturned the welfare fraud conviction of a woman who had failed to report the presence of an adult male in her household, contrary to administrative regulations. The court noted that notification of possession of "income and resources" was "required by law" pursuant to RCW 74.04.300:

It shall be the duty of recipients of public assistance to notify the department . . . of all income or resources not previously declared . . .

Allegation of the presence of an adult male was, without the additional allegation of "income or resources" added by that individual, insufficient to justify conviction under RCW 74.08.331. The court noted that

For reasons best known to itself, the legislature deliberately determined in 1957 that it would limit a recipient's *statutory* duty to notify the department solely to notification of the receipt or possession of income or resources not previously reported to the department.

*State v. Walters, supra* at 715. Thus, although the defendant in that case may have been civilly liable for overpayment, she could not be criminally convicted because she had not been charged with failing to reveal additional "income or resources."

In this manner, the instant case is indistinguishable from *Walters. There has been no evidence presented that Ms. Ermert's savings, and consequently her car, came from any source other than her public assistance payments.* By statute, these items are not "income" or "resources." Under RCW 74.04.005(11), a "resource" is "[a]ny asset, tangible or intangible, owned by or available to the applicant *at the time of application"*. (Italics ours.) Neither the savings nor the car was owned by defendant when she initially applied for public assistance. "Income" is "*appreciable gains* in real or personal property . . . which are received . . . after applying for or receiving public assistance." (Italics ours.) RCW 74.04.005(12). Public assistance payments are not considered "income" and are exempted from that definition. *Smith v. Hollenbeck,* 48 Wn.2d 461, 294 P.2d 921 (1956). Thus, Ms. Ermert had no "income or resources" that were not reported to the department. Since the statutes require no other disclosures to avoid *criminal* liability under RCW 74.08.331, she could not be convicted of that crime.

In *State v. Arndt* this court acknowledged the *Walters* limitations, citing them in concluding that the "to convict" instruction in that case could not be objected to for the first time on appeal because it was clear "[t]he facts defendant 'failed to reveal' were all items of income or resources . . . clearly . . . 'required by law' to be revealed. RCW 74.04-.300." *State v. Arndt, supra* at 386. *See also State v. Jeske,* 87 Wn.2d 760, 764–65, 558 P.2d 162 (1976) (stating that this court is "in accord" with the *Walters* holding that disclosure must be "required by law"). We therefore now explicitly adopt *Walters'* analysis of the requirements of RCW 74.08.331.

The State contends, however, that RCW 74.08.331 also requires the welfare recipient to disclose any other "material fact, condition or circumstance" or "any change in status in respect to resources or income, or need, or family composition, money contribution and other support" that is determinative of eligibility under DSHS administrative regulations. They cite *State v. Knowles,* 79 Wn.2d 835, 839, 490 P.2d 113 (1971), for the proposition that:

> An applicant for or recipient of public assistance, possessing ordinary understanding, should, we think, know that public assistance grants by their very nature depend on such things as *eligibility* (RCW 74.08.025), *need* (RCW 74.04.005(16)), *resources* (RCW 74.04.005(17)), and *income* (RCW 74.04.005(15)). A person of ordinary understanding should have little difficulty in comprehending that, in applying for or in receiving public assistance, the statute obliges him to speak and report the truth in supplying material information about himself and his family concerning such things as assets, resources, income, family circumstances, health, age, educational skills, training, financial expectancies and contingencies—in short to give to the department a truthful report of all conditions and circumstances "affecting eligibility of need for assistance." RCW 74.08-.331.

Thus, the State argues that Ms. Ermert must have known the significance of her "change of status" regardless of the absence of disclosure "required by law" outside of RCW 74.08.331.

██ We cannot accept the State's argument. Initially, *Knowles* itself limited its applicability to the failure to report moneys "being received by the recipient *from sources other than the Department of Public Assistance"*. (Italics ours.) *State v. Knowles, supra* at 839. More importantly, if the disclosure "required by law" was not limited to statutorily created requirements, but extended to those promulgated from time to time by DSHS, the statute would unconstitutionally delegate to DSHS the authority to determine what is a felony crime under RCW 74.08.331.

The Court of Appeals declined to reach this issue. However, because Ms. Ermert's conviction cannot be justified under statutory disclosure requirements, as set forth above, the validity of an extension of criminal liability for failure to conform with administrative disclosure requirements would appear to be necessarily before us. Such an administrative provision in this case creates the *only* source of criminal liability; if it does not exist, there is no evidence that Ms. Ermert has committed a crime under RCW 74.04-.300 and RCW 74.08.331.

The determination of crimes and punishment is a legislative function subject to only limited review in the courts. *State v. Monday,* 85 Wn.2d 906, 540 P.2d 416 (1975). The legislature's authority may be delegated only when the legislature has provided (1) appropriate standards to define what is to be done, and what administrative body is to accomplish it, and (2) procedural safeguards to control arbitrary administrative action. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978). It would appear that no such standards or safeguards have been contemplated or provided in RCW 74.08.331 to justify delegation of the authority to *define crimes* to DSHS. *See State v. Dougall,* 89 Wn.2d 118, 570 P.2d 135 (1977).

The testimony of State witnesses was that the eligibility requirements and resource limits which made Ms. Ermert ineligible for public assistance are contained not only in the WAC but in interoffice memos and manuals that are not available to the public. This is a case much different from *State v. Bryan,* 93 Wn.2d 177, 606 P.2d 1228 (1979), in which this court approved delegation of juvenile sentencing standards to DSHS. It involves the determination of the elements of a crime, not its punitive consequence. Unlike *Bryan,* there is no provision in this case for regular legislative review of DSHS's public assistance criteria. The legislature has not, as it did in *Bryan,* provided explicit guidelines for the development of criminal standards. Although Ms. Ermert may be civilly liable for public assistance overpayments to her, criminal charges cannot be based

on administrative eligibility regulations. As this court noted in striking down a conviction under a criminal statute that delegated to the board of pharmacy the authority to name drugs whose possession would be illegal:

> The legislature has delegated to the board the authority to promulgate rules which supply the elements of *felonies*. For petitioner, the promulgation of one such rule has resulted in a 5–year prison sentence and the social and civil burdens resulting from a felony conviction. In short, the outcome of this rule making has affected interests of petitioner which far exceed those economic interests at stake in *Barry & Barry, [Inc. v. Department of Motor Vehicles*, 81 Wn.2d 155, 500 P.2d 540 (1972)] and *Washington State School Directors Ass'n [v. Department of Labor & Indus.*, 82 Wn.2d 367, 510 P.2d 818 (1973)].

*In re Powell*, 92 Wn.2d 882, 892, 602 P.2d 711 (1979). Procedural due process requires that a criminal statute give fair warning of prohibited conduct.

Under the statutory disclosure requirements of RCW 74.04.300, there has been *no* evidence presented by the State that Ms. Ermert could have been guilty of a crime. The complete failure of proof raises a reasonable doubt as to Ms. Ermert's criminal culpability which precludes her conviction under RCW 74.08.331. *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

## II
### INEFFECTIVE ASSISTANCE OF COUNSEL

 Our determination that Ms. Ermert could not have been convicted of the crime of welfare fraud helps demonstrate that she was denied effective assistance of counsel, and thus justifies examination of the substantive issue of failure of proof despite trial counsel's failure to adequately preserve the issue at trial. We otherwise could not have reached this issue because instructions must be adequately objected to at trial in order to preserve the issue on appeal.

CR 51(f); RAP 2.5(a); *Reed v. Pennwalt Corp.,* 93 Wn.2d 5, 604 P.2d 164 (1979).

The issue of the effectiveness of trial counsel denying due process was first raised in the petition for review. However, the question is appropriately raised at any point in the proceedings and a conviction will be overturned if counsel was so ineffective as to violate the defendant's right to a fair and impartial trial.

■ The standard for determining the existence of such a violation in this state has been to determine if, "'"[a]fter considering the *entire record,* can it be said that the accused was afforded an *effective representation* and a *fair and impartial* trial?"'" *State v. Myers,* 86 Wn.2d 419, 424, 545 P.2d 538 (1976). In *State v. Adams,* 91 Wn.2d 86, 90, 586 P.2d 1168 (1978), this court discussed the development of a "more 'objective' standard . . . akin to that used in legal malpractice cases" to determine ineffective assistance of counsel. We did not, however, determine which standard should be used because counsel's actions in that case were believed to be appropriate under any criteria. We need not determine if the standard suggested in *Adams* should be adopted, because in this case the older *Myers* standard was also violated. As set forth below, Ms. Ermert was denied a fair and impartial trial.

In considering claims of ineffective assistance of counsel, the courts have declined to find constitutional violations when the actions of counsel complained of go to the theory of the case or to trial tactics. *See State v. Mode,* 57 Wn.2d 829, 360 P.2d 159 (1961); *State v. Wilkinson,* 12 Wn. App. 522, 530 P.2d 340 (1975). The errors made by counsel in this case, however, were not ones of theory or tactics. The attorney acknowledged in court that he had not discussed the case with witnesses called by the defense. More importantly, as contended in the petition for review of trial counsel's effectiveness, he failed to object to an instruction on the grounds that it incorrectly set out the elements of

the offense with which his client was charged.[1] Trial counsel thus allowed Ms. Ermert to be convicted of a crime she could not have committed under the facts presented by the State in support of the prosecution. Defense counsel did not cite *Walters* in objecting to the instruction, despite the case's clear applicability and the requirement of CR 51(f) that objections and their grounds be specifically articulated. In allowing his client to be convicted of a crime she could

---

[1]The trial court gave the following instruction regarding the elements of welfare fraud necessary to convict Ms. Ermert:

To convict the defendant . . . of the crime of grand larceny . . . the state must prove to you beyond a reasonable doubt:

(1) That . . . the defendant did obtain or did attempt to obtain from the Department of Social and Health Services certain personal property, to–wit: lawful money of the United States;

(2) That the defendant was not entitled to said property or that said property was in a greater amount than that to which she was entitled;

(3) That said property was obtained or attempted to be obtained by means of

*Either*:

(a) a willful statement or representation;

*Or*

(b) a willful failure to reveal any material fact as required by law;

*Or*

(c) a willful failure to promptly notify the county office in writing of any change in status in respect to resources, or income or need, or family composition, money contribution and other support from whatever source derived, or any other change in circumstances affecting her eligibility or need for assistance as required by law . . .

Defense counsel objected to the instruction as "arbitrary and capricious," stating "we feel that a person who accumulates a savings out of the grant . . . without receiving any money from outside sources is not dealt with fairly by [DSHS resource limit] regulations." He did not, however, rely on *Walters*. He did not object specifically to element (3)(c) of the instruction, in order to point out that it implies a duty to notify far greater than the statutory requirement that the public assistance recipient report "income" and "resources." RCW 74.04.300. Trial counsel also failed to object to element (3)(a), which should have required that a "willful statement" be "false" to justify conviction. *State v. Walters*, 8 Wn. App. 706, 713, 508 P.2d 1390 (1973); RCW 74.08.331. He did not propose an alternative instruction that could have cured the defects in (3)(c). On the basis of trial counsel's failure to adequately object, the Court of Appeals declined to consider the correctness of the instruction. This demonstrates the ineffectiveness of trial counsel in neglecting to preserve error essential to appeal on whether defendant could have been found guilty of the crime charged.

not have committed, trial counsel denied Ms. Ermert a "fair and impartial" trial.

In most cases of ineffective assistance of counsel, the cause can be remanded for trial with new counsel. However, in this case, as demonstrated in section I of this opinion, there has been a complete failure of proof by the State. Under no circumstances could a jury find Ms. Ermert guilty of welfare fraud; no evidence that she failed to report income or resources as required by RCW 74.04.300 was presented. We therefore must reverse her conviction with directions to dismiss the proceeding.

It is so ordered.

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.