[No. 3024-2. Division Two. January 23, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. ALLEN CARL JONES, ET AL, *Appellants.*

*Skoog & Mullin* and *George Kelley,* for appellants.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, J.—Defendants Carl Allen Jones and Judith Marie Jones appeal from their conviction for welfare fraud. RCW 74.08.331. We find no reversible error and affirm.

According to a statement written and signed by both defendants and used at trial, they have been on and off the state public assistance roles since about 1968. In 1971 the

husband began to receive disability benefits from the Veterans Administration (VA), ranging from $25 to $35 per month. Defendants never reported the extra money to the Department of Social and Health Services (DSHS) until March 1976, when they were applying for public assistance at the Puyallup DSHS office. Had they reported the disability benefits earlier, their welfare payments would have been reduced dollar–for–dollar.

Defendants were charged in Pierce County with one count of grand larceny under the welfare fraud statute, RCW 74.08.331, for having failed to report the VA benefits while they were receiving welfare payments between October 14, 1975, and December 31, 1975. Two other counts were dropped for lack of jurisdiction.[1]

At trial the State presented considerable undisputed, documentary evidence: a signed application for assistance, dated October 14, 1975, in which defendants stated they were receiving no veterans' benefits; a signed "eligibility review" form dated December 27, 1975, in which they indicated that except for welfare money they had received no other income within the last 12 months; a signed handwritten statement dated April 19, 1976, which stated they never reported the VA benefits to the DSHS until March 1976; two canceled checks totaling $517.50, issued by the State and endorsed by the defendants; and VA records showing that the husband had received $35 per month during the period of October through December of 1975.

Defendants were found guilty. The court suspended sentencing for 5 years on condition that they make full restitution to the State. This appeal followed.

Defendants claim their conviction must be reversed because there was insufficient evidence to prove they committed welfare fraud under one of the three alternate

---

[1]The original information contained two extra counts which charged defendants with committing welfare fraud during two other periods: April 26 to June 30, 1974, and July 1, 1974, to June 30, 1975. The two counts were dropped, however, when it was learned that defendants had lived outside of Pierce County during those periods.

modes listed in jury instructions Nos. 11 and 12, and because the jury was not required to specify which mode or modes it relied upon in reaching its verdict. We agree that one of the alternate modes technically should not have been included in the instructions; in light of the entire record, however, we conclude that the error was harmless.

The prosecutor drafted jury instructions Nos. 11 and 12 on the basis of language in RCW 74.08.331. That statute provides that the single offense of welfare fraud can be committed in several ways, including

a *wilfully false statement, . . .* or a *wilful failure to reveal* any material fact, . . . or a *wilful failure to promptly notify* the county office in writing as required by law [of] any change in status in respect to resources, or income, or need, or . . . money contribution . . . from whatever source derived, or any other change in circumstances affecting . . . eligibility or need for assistance, . . .

(Italics ours.) Jury instructions Nos. 11 and 12 allowed the jury to find defendants guilty of welfare fraud by any or all of the three alternate modes: (1) willfully giving false statements; (2) willfully failing to reveal material facts; or (3) willfully failing to notify the DSHS promptly as required by law of a change in status or circumstances with respect to resources or income affecting their eligibility or need for assistance.[2] The jury was not required to specify which mode or modes formed the basis for its verdict.

When more than one mode of committing a crime is charged, a jury is not required to agree unanimously as to which alternate mode was used to commit the crime, as

---

[2]Instruction No. 11 provides:

If you find from the evidence, beyond a reasonable doubt all of the following alleged facts, to–wit:

(1) That in Pierce County, Washington,

(2) On or about the period from October 14, 1975, to December 31, 1975,

(3) That the defendant, Allen Carl Jones did obtain any public assistance to which he is not entitled, or greater public assistance than that to which he is justly entitled,

(4) By means of *either*

(a) A willfully false statement, *or*

long as the alternate modes are not repugnant to each other and there is substantial evidence to support each of the alternate modes. *State v. Arndt,* 87 Wn.2d 374, 376–78, 553 P.2d 1328 (1976); *State v. Fateley,* 18 Wn. App. 99, 103, 566 P.2d 959 (1977). Such a conviction, however, must be overturned when the evidence is insufficient to warrant an instruction on one of the modes, unless the error affirmatively appears to be harmless. *State v. Golladay,* 78 Wn.2d 121, 138, 470 P.2d 191 (1970).

■ The jury's verdict in this case technically is tainted because there is no evidence that defendants committed welfare fraud by means of the third mode described in the instruction, namely, by failing to notify the DSHS of changes in status or circumstances. The record reveals that defendants' rate of unreported income from the VA remained constant—$35 per month—during the period for which they were charged. Because there could have been no "change of circumstance" to report, the reference to mode three had no place in the instruction. It therefore was error to refer to mode three. *See State v. Golladay, supra* at 138; *State v. Vanderburg,* 14 Wn. App. 738, 740–41, 544 P.2d 1251 (1976); *State v. Walters,* 8 Wn. App. 706, 716–17, 508 P.2d 1390 (1973).

---

(b) A willful failure to reveal any material fact, condition or circumstances affecting eligibility of need for assistance, which is required by law, *or*

(c) A willful failure to promptly notify the Department as required by law of any change in status in respect to resources or income or family composition, money contribution and other support from whatever source derived, or any other change in circumstances affecting eligibility or need for assistance,

Then you shall find Allen Carl Jones guilty of grand larceny as charged in the amended Information in connection therewith.

You are instructed that if the entire number of the jury agrees that any of the subelements (a), (b) or (c) of element 4 has been proven, that element has been proven.

Instruction No. 12 pertained to codefendant Judith Marie Jones, and was substantially the same as instruction No. 11. Defendants also assign error to instructions Nos. 6 and 10, which contain references to defendants' duty to report changes of circumstances to the Department of Public Assistance. For convenience we deal with all four instructions as one issue.

██ It remains, however, to determine whether the error warrants reversal. In *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977), the Supreme Court set out the test for reviewing erroneous jury instructions:

> When the record discloses *an error in an instruction* given on behalf of the party in whose favor the verdict was returned, the error is *presumed to have been prejudicial,* and to furnish ground for reversal, unless it affirmatively appears that it was harmless. . . .
>
> A harmless error is an error which is *trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and *in no way affected the final outcome of the case.*

*See also State v. Golladay, supra* at 139; *State v. Burnham,* 19 Wn. App. 442, 445, 576 P.2d 917 (1978).

After carefully examining the record, we hold the instructional error was merely technical, and thus harmless. We fail to see, and defendants have failed to suggest, any actual harm that could have resulted from the error. Defendants admit their failure to disclose the VA benefits, and argue only that they lacked intent to defraud the State. They contend that they would have reported the benefits if they had known about their duty to report all outside income to the DSHS. This contention flies in the face of the evidence. Their alibi—that they had been told they need not report monthly outside income under $30—fails to explain why they never reported their $35 checks to the DSHS during October through December of 1975. Both spouses admitted they had gone through the welfare application process several times since 1971, and that they never had reported the VA income. Both admitted their signatures on the public assistance application and on the eligibility review form, in which they falsely indicated their household was receiving no veterans' benefits.[3] Both

---

[3]These admissions alone would have been enough to establish a prima facie case of welfare fraud. Under RCW 74.04.300, it is "prima facie evidence of fraud" for a welfare recipient to fail to notify the Department of Social and Health Services "within twenty days of the receipt or possession of all income or resources *not previously declared* to the department . . ." (Italics ours.)

spouses had taken college or other post–secondary education, and neither claimed the questions on the forms were too complicated for them to understand. The wife stated she read the forms carefully "most of the time." She said she generally understood the questions she answered on the forms, and that she was aware of the perjury warnings on the back of each of the forms. The husband admitted on cross–examination that it was clear to him that the forms required them to indicate outside income, and that he and his wife should have reported all outside sources of income, *regardless of amount*. Defendants' credibility on the issue of intent was further eroded by admissions of their conviction for welfare fraud 3 years earlier.

In sum, the overwhelming documentary evidence, as well as defendants' own incriminating admissions at trial, leave no reasonable doubt as to their guilt under modes one and two. No reasonable juror could have been misled by the references to mode three and its obviously inapplicable concept of "changes in status." The record as a whole thus affirmatively shows that the error was harmless to defendants' substantial rights.

The facts of this case are distinguishable from those of the *Golladay* case, in which the instructional error was found to be prejudicial. There, a defendant was charged with first–degree murder committed by three alternate modes: premeditation, felony–murder (rape) and felony–murder (larceny). A new trial was required because the jury might have based its verdict on the felony–murder (larceny) mode. Because it was a felony–murder situation, and because of the closely balanced facts of the case, the instructional error had a high potential for misdirecting the jury. It permitted the jury to find that the defendant had committed a larceny at the scene of the murder, when there was no probative evidence to support such a finding. Indeed, there was credible evidence to support the defendant's alibi that he was not at the scene when the murder was committed. *State v. Golladay, supra* at 139–40.

In this case, however, the uncontroverted fact is that defendants failed to report their outside income. It is immaterial whether each unreported payment constituted a "change of status" as opposed to a continuation of the status quo.[4] The only real question is whether defendants intended to defraud the State. The court's inclusion of mode three in the instructions was perhaps superfluous under the facts of this case, but it was not prejudicial to the rights of defendants.

 Defendants also assign error to the trial court's refusal to give a separate jury instruction regarding specific

---

[4]Defendants' failure to report the Veterans Administration (VA) benefits might well have constituted a violation of RCW 74.08.331 under both modes two and three of the statute. There is a generic similarity between the two modes. The only difference between them, if any, is the element of time: mode two imposes a duty to disclose at the time of application, while mode three imposes the *same duty* to disclose on a continuing basis after the initial application is completed. The modes are sufficiently similar so that a welfare recipient can violate both of them simultaneously by failing to report income to the Department of Social and Health Services (DSHS). The Supreme Court in *State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976), all but erased the lines distinguishing modes two and three, when it stated at page 384:

> The acts prohibited by [modes] (2) and (3) are not inherently different. Rather, they are almost indistinguishable. "The legislative intent as to the nature of the distinction [between a duty to reveal and a duty to notify], if any, is not readily discernible." *State v. Walters* [8 Wn. App. 706, 717, 508 P.2d 1390 (1973)]. An example may be taken from the facts in the instant case. Defendant learned in June or September 1971 that the house in which she lived was rent free. Yet on two forms she filled out for public assistance after this discovery, she asserted that she was paying $65 per month rent. In addition, a welfare eligibility examiner testified that defendant never reported to the Division of Public Assistance that she paid no rent. Her act of filling out the forms without stating she was receiving free rent could be a violation of both (1) and (2), *and her failure to otherwise notify the agency of this fact could be a violation of both (2) and (3).*

(Italics ours.)

In this case, viewing the receipt of each unreported VA check as a separate change of circumstances, it might be argued that defendants violated both modes two and three by failing to report the checks. *See also* RCW 74.04.300, which makes it "prima facie evidence of fraud" for a welfare recipient to fail to notify the DSHS "within twenty days of the receipt or possession of all income or resources *not previously declared* . . ." (Italics ours.)

We need not employ this analysis, however, because we have resolved the case on a harmless error rationale.

intent as an element of the crime of welfare fraud. We note, however, that instruction No. 23 requires the State to prove "[t]hat the act was done with the intent to deprive or defraud another."[5] This clause adequately describes the mens rea of the crime of welfare fraud. So long as the jury correctly was apprised of the intent required for the crime charged, it is insignificant whether the intent further was characterized as "specific." The instruction permitted defendants to argue to the jury their theory of lack of intent; no more was required. *State v. McKinney,* 19 Wn. App. 23, 27, 573 P.2d 820 (1978); *see also People v. Faubus,* 48 Cal. App. 3d 1, 121 Cal. Rptr. 167 (1975) (failure to define intent as "specific intent" in welfare fraud case, held to be harmless error).

Although we have found fault with the jury instructions in this case, we see no reason to overturn the jury's verdict. The prejudicial potential of any reference to mode three is rendered insignificant by the overwhelming evidence of guilt under modes one and two. We hold that the jury could not have been misled either by the irrelevant references in the instructions to the defendants' duty to report changes in circumstances, or by the State's failure to use the technical term, "specific intent."

Defendants' convictions are affirmed.

PEARSON, C.J., and PETRIE, J., concur.

---

[5]Instruction No. 23 provides:

"The intent with which an act is done is a mental process and as such generally remains hidden within the mind where it is conceived and is rarely, if ever, susceptible of proof by direct evidence, but must be inferred or gathered from outward manifestations by the words or acts of the party entertaining them, and the facts or circumstances surrounding or attendance upon the act with which it is charged to be connected.

"That the act was done with the intent to deprive òr defraud another must be proven, but direct and positive evidence is not necessary to prove the intent; it may be inferred from the evidence."