[No. 4175–II.   Division Two.   January 5, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD MARTIN MATTHEWS, *Appellant.*

*Leonard W. Moen* and *Lawrence W. Moore,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PEARSON, J.—Edward Matthews appeals his conviction of grand larceny (welfare fraud). RCW 74.08.331. He was charged as both a principal and an accomplice. RCW 9A.08.020. The sole issue is whether there was sufficient evidence to submit the issues of his guilt as both a principal and an accomplice. We conclude that the evidence was sufficient, but an erroneous jury instruction requires that we reverse and grant defendant a new trial.

The facts necessary to this inquiry follow. In early May 1977, defendant and his wife, Shirley K. Matthews, allegedly separated, and he alleged that he moved into a trailer located on property owned by his brother. On May 21, 1977, Mrs. Matthews applied for state public assistance, alleging in her application that she and her husband had separated and he was not providing her with support. She began receiving assistance in May of that year and continued to receive assistance through August 1978. Defendant was receiving income from his job through September 1977, and from disability insurance beginning in January 1978. Mrs. Matthews did not report these sources of income in either of the two eligibility review forms she submitted to the Department of Social and Health Services during the period she was receiving public assistance.

In May or June 1978, DSHS began an investigation of the Matthewses. As a result, defendant and Shirley Matthews were both charged with violation of RCW 74.08-.331. Mrs. Matthews pleaded guilty on March 19, 1979, and was sentenced on May 21, 1979. After a jury trial, defendant was found guilty on May 2, 1979, and sentenced on June 26, 1979.

The State introduced the testimony of a number of witnesses linking the defendant circumstantially to living with his wife and participating in the receipt of public assistance. A welfare fraud investigator, Mr. Coucoules, testified that in an interview with defendant, he acknowledged that his wife was receiving public assistance, but stated that he was neither living with his wife nor sharing in the assistance. There was evidence that after his alleged separation the defendant never reported any address change to either his former employer or the wage earner plan organization to which he belonged. Dorothy Wegren, a next–door neighbor, testified that defendant purchased her husband's truck in April 1978, on an installment basis, with one payment being made by Mrs. Matthews. She stated the truck was often parked at the Matthewses' home and that she often saw defendant at the home. Another neighbor, Claire Riche,

testified she had seen defendant's vehicle and items of his clothing at the home. She also testified to a conversation she heard between defendant and Mrs. Matthews in which defendant stated that Mrs. Matthews was to continue receiving assistance so that he could use this money to get a few things he wanted. James Barlow, the landlord and owner of the Matthewses' home, testified that he often saw defendant at the home during the period of the alleged separation. He further testified that defendant, who occasionally contributed to the rent payments during this period, requested that the rent receipts be made out in Mrs. Matthews' name for public assistance purposes. Another neighbor, Rita Watson, testified she visited the Matthewses' home on a daily basis during the period of the alleged separation, and that defendant was often present, his clothes were present, and he often ate meals there. She also testified she heard a conversation in which defendant told Mrs. Matthews that the disability insurance checks were his, and that she was to look to the assistance money for her support.

Defendant's case consisted of the testimony of his brother and sister–in–law, who testified that during the period involved defendant spent most evenings at the trailer house on the brother's property.

The elements instruction permitted the jury to find defendant guilty as either a principal or an aider or abettor if he obtained or aided and abetted any other person to obtain any public assistance to which he was not entitled, or greater public assistance than that to which he was justly entitled by means of:

(a) A wilfully false statement, *or*
(b) A wilful failure to reveal any material fact, condition or circumstance affecting eligibility or need for assistance, which is required by law, *or*
(c) A wilful failure to promptly notify the Department as required by law of any change in status in respect to resources or income or family composition, money contribution and other support from whatever source derived,

or any other change in circumstances affecting [his] eligibility or need for assistance . . . .

The jury was also instructed that it need not be unanimous as to which of the three alternatives had been committed as long as each juror believed defendant had committed at least one of the alternatives. Further, the jury was instructed that it need not be unanimous as to whether the defendant was a principal or aider and abettor, as long as it was unanimous that defendant participated in the crime charged. This portion of the instruction is consistent with *State v. Carothers*, 84 Wn.2d 256, 525 P.2d 731 (1974) and *State v. Bennett*, 20 Wn. App. 783, 582 P.2d 569 (1978). *See State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976).

Defendant does not challenge the instruction as an incorrect statement of the law. Rather, defendant's contention is that the evidence was insufficient to establish that defendant participated in the crime as an accomplice. The argument is that defendant's physical presence in the home was not sufficient evidence of his participation in the welfare fraud to make him an accomplice under RCW 9A.08-.020. Defendant relies upon *In re Wilson*, 91 Wn.2d 487, 588 P.2d 1161 (1979), where our Supreme Court held that physical presence of an accused at the scene of a crime is not sufficient evidence to establish his participation as an accomplice; there must be substantial evidence that the accused had (1) knowledge of the wrongful purpose of the perpetrator, and (2) intent to encourage the perpetrator in that wrongful purpose. While we agree that these principles are correct general statements of the law pertaining to accomplices, we disagree that the evidence was insufficient under appropriate standards of review to submit the issue of defendant's guilt to the jury.

We start with the proposition that a challenge to the sufficiency of the evidence requires us to view it in a light most favorable to the State, affording the State the benefit of all reasonable inferences therefrom. *State v. Bishop*, 90

Wn.2d 185, 580 P.2d 259 (1978); *State v. McKeown,* 23 Wn. App. 582, 596 P.2d 1100 (1979).

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781 (1979); *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

■ The evidence cited above satisfies that standard. A rational trier of fact could well have believed that defendant and his wife were not separated during any of the period in question. A rational jury could likewise have believed that defendant encouraged his wife to apply for welfare, used the welfare money for his own benefit, and assisted his wife in concealing his status from the department. Furthermore, because both Mr. and Mrs. Matthews were charged with committing welfare fraud, it was not necessary for the State to establish which defendant was the principal and which was the abettor so long as each defendant was shown to have participated in the crime and committed at least one overt act. *State v. Baylor,* 17 Wn. App. 616, 565 P.2d 99 (1977).

At oral argument, defendant's counsel called our attention to the case of *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980), which was decided after this case was tried. In that case, our Supreme Court condemned an instruction which defined culpability by quoting verbatim RCW 9A.08-.010(1)(b). In the case at bench, a similar instruction was given, as follows:

A person knows or acts knowingly or with knowledge when:

(1) he or she is aware of a fact, facts or circumstances or result described by law as being a crime; or

(2) he or she has information which would lead a reasonable person in the same situation to believe the facts exist which facts are described by law as being a crime.

■■ The vice of this instruction according to *State v. Shipp, supra,* is that subparagraph (2) is susceptible to being construed in three different ways, two of which would cause an unconstitutional mandatory presumption of culpability rather than a permissive presumption, which is constitutional.

Even though this error was not preserved at trial, we are required to consider it because of its constitutional stature. *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). Unless we can say the error was harmless beyond a reasonable doubt, we must reverse this conviction.

The State's case was largely circumstantial to establish defendant's knowledge of his wife's representations to DSHS on her original application as well as her two supplementary reports. We are, therefore, unable to conclude that if the jury were to apply a subjective test of defendant's knowledge as required by *Shipp,* it would necessarily have found him guilty on any of the three ways described in RCW 74.08.331. At least we are unable to conclude that a jury would have found defendant had knowledge of his wife's representations to DSHS. *State v. Russell,* 27 Wn. App. 309, 617 P.2d 467 (1980).

Accordingly, we reverse and remand for a new trial.

PETRICH, J., concurs.

REED, C.J. (concurring specially)—Because this matter will have to be retried, and there are serious questions regarding the preservation of error and the appropriateness of review on the issue which I will discuss, I am casting these observations in the form of a special concurring opinion. I do so in the hope that those observations will focus attention on the problems arising from the less than precise language of RCW 74.08.331, which reads as follows:

> Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as

required by law, or a wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, *or aids or abets any person* to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

Any person who by means of a wilfully false statement or representation or by impersonation or other fraudulent device aids or abets in buying, selling, or in any other way disposing of the real property of a recipient of public assistance without the consent of the secretary shall be guilty of a gross misdemeanor and upon conviction thereof shall be punished by imprisonment for not more than one year in the county jail or a fine of not to exceed one thousand dollars or by both.

(Italics mine.)

Although this statute has survived an attack for unconstitutional vagueness and uncertainty, *State v. Knowles,* 79 Wn.2d 835, 490 P.2d 113 (1971), it is far from being a model for clarity and continues to pose problems of interpretation for the courts. *See for example State v. Ermert,* 94 Wn.2d 839, 621 P.2d 121 (1980); *State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976); *State v. Jones,* 22 Wn. App. 506, 591 P.2d 816 (1979); *State v. Walters,* 8 Wn. App. 706, 508 P.2d 1390 (1973).

It seems to me, however, that the legislature intended by the first portion of the statute to create a specific crime which can be committed only by a certain class of persons, namely applicants for or recipients of welfare benefits. This is so because the duties to report income or resources therein mentioned arise from RCW 74.04.300, which reads in part as follows:

It shall be the duty of *recipients* of public assistance to notify the department within twenty days of the receipt

or possession of all income or resources not previously declared to the department, and any failure to so report shall be prima facie evidence of fraud.

(Italics mine.) "Applicant" and "recipient" are respectively defined in RCW 74.04.005(8) and (9) as follows:

"Applicant"—Any person who has made a request, or on behalf of whom a request has been made, to any county office for assistance.

"Recipient"—Any person receiving assistance or currently approved to receive assistance at any future date and in addition those dependents whose needs are included in the recipient's grant.

Defendant Matthews was not a "recipient" of welfare nor had he personally applied for benefits. It was Mrs. Matthews alone who applied for and was a recipient of benefits, albeit based on the assertion that Mr. Matthews was no longer a resident of the household and was not contributing to its support. Not being a recipient, Mr. Matthews was not "required by law" to either reveal any fact to the department or to promptly notify of a change in his status. Thus, the State may not charge Mr. Matthews as a principal with committing welfare fraud in the alternative ways described in the elements instruction.[1]

---

[1]Instruction No. 6, the elements instruction, reads in toto as follows:

"If you find from the evidence, beyond a reasonable doubt all of the following alleged facts, to–wit:

"1) That in Pierce County, Washington;

"2) On or about the period from May 20, 1977 and August 31, 1978;

"3) That the defendant did obtain or aided and abetted any other person to obtain any public assistance to which he was not entitled, or greater public assistance than that to which he was justly enriched;

"4) By means of *either*

"(a) A wilfully false statement, *or*

"(b) A wilful failure to reveal any material fact, condition or circumstances affecting eligibility of need for assistance, which is required by law, *or*

"(c) A wilful failure to promptly notify the Department as required by law of any change in status in respect to resources or income or family composition, money contribution and other support from whatever source derived, or any other change in circumstances affecting eligibility or need for assistance;

"Then you shall find the defendant guilty of grand larceny as charged in the information in connection therewith.

Yet, under the elements instruction, it is possible the jury found defendant owed the duties required of a recipient and based its guilty verdict on his failure to reveal or report. We have no way of knowing, because the verdict was general in form. There was of course, *no evidence* that defendant personally made any false statement to obtain benefits for his wife and children, although he may have encouraged or aided and abetted her in that respect.

This is not to say that defendant could not properly have been charged with aiding and abetting Mrs. Matthews in committing welfare fraud. In fact, that is what should have been done. RCW 74.08.331 also creates a separate and distinct crime of aiding and abetting a welfare recipient to commit welfare fraud. However, by charging and convicting defendant either as a principal or as an aider and abettor under RCW 9A.08.020, the State has run afoul of the rule that such statutes are general in their terms and

> manifestly intended to meet cases not otherwise specifically provided for by statute. They have no application to acts which are, by specific and distinct statutes, expressly designated and made subject to punishment as primary crimes in themselves.

*State v. Wappenstein,* 67 Wash. 502, 530, 121 P. 989 (1912). *Accord, State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845 (1953); *State v. Morrison,* 175 Wash. 656, 27 P.2d 1065 (1933); *State v. Furth,* 82 Wash. 665, 674, 144 P. 907 (1914).

---

"You are instructed that if the entire number of the jury agrees that any one of supplements (a), (b) or (c) of element 4 has been proven, that element has been proven.

"You are further instructed that if the entire number of the jury agrees that the defendant participated in the crime charged whether or not they agree as to whether his participation was as a primary actor or as an aider or abettor, then he shall be found guilty.

"On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty."

In *Furth* the court held the general aider and abettor statute (the forerunner of RCW 9A.08.020) had no application to the offense of receiving deposits in a bank knowing it to be insolvent. The court held an "outsider" could not be prosecuted as an aider and abettor because the act creating the crime (1) confined its commission to a particular class; and (2) contained its own special aider and abettor clause also limited to the same class.

Thus, I believe it was the intention of the legislature to limit and define the class which could be guilty of welfare fraud; further, the intent was to create the separate crime of aiding and abetting; therefore, the general aider and abettor statute, RCW 9A.08.020, does not apply to defendant's activities and cannot form the basis for the charge. The vice of this case is that under the elements instruction given, defendant may have been convicted as a principal.

A problem of review arises because defendant did not call this particular defect of the elements instruction to the trial court's attention. Nor did defendant raise the issue on appeal. However, defendant's general attack on the sufficiency of the evidence to convict probably requires us to consider the issue. *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). It is also possible defendant was deprived of due process by defense counsel's failure to raise the point and is therefore entitled to review. *See State v. Ermert, supra.*

In any event, because defendant must undergo a new trial, any further appeals on the issue will be avoided if the State charges him under RCW 74.08.331 with aiding and abetting Mrs. Matthews to commit welfare fraud and makes no effort to charge him as a principal.[2]

---

[2]By instruction No. 4 the court informed the jury of a recipient's duty to report, RCW 74.04.300, and by instruction No. 5 informed the jury that if Mr. Matthews was separated or divorced from his wife, he was not required to notify

the Department of Social and Health Services of any change in his circumstances or financial condition.

The difficulties in this case arose because all involved seemed to assume it would be a defense if Mr. Matthews could prove he was in fact living separate and apart from his family. This issue was obviously resolved against him. However, I submit that even if he was clandestinely residing in the home, his criminal liability could be only that of an aider and abettor under RCW 74.08.331 unless he actively applied for or became a recipient of welfare.