622 So.2d 502 (1993)
STATE of Florida, Appellant,
v.
James CUDA a/k/a Jay Cuda and Michael A. Boland, Appellees.
Nos. 92-1950, 92-2227.
District Court of Appeal of Florida, Fifth District.
July 16, 1993.
*503 Robert A. Butterworth, Atty. Gen., Tallahassee, and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellant.
Flem K. Whited, III, Daytona Beach, for appellees.
James T. Miller, Florida Ass'n of Crim. Defense Lawyers, Jacksonville, Robert A. Harper, Jr., Florida Ass'n of Crim. Defense Lawyers, Tallahassee, and Donnie Murrell, Jr., Florida Ass'n of Crim. Defense Lawyers, West Palm Beach, amicus curiae.
PETERSON, Judge.
We have consolidated these two appeals because they have as a common issue the determination by the respective trial courts that section 415.111(5), Florida Statutes (1991), is unconstitutionally vague. The charges based upon violations of this statute were dismissed and the state appeals. We reverse.
To punish those who would exploit the impaired elderly citizens of this state by diverting those elderly persons' funds for their own purposes and profit, the legislature enacted the following statutory provisions that were considered by the trial courts in the instant cases:
Section 415.111(5), Florida Statutes (1991):
A person who knowingly or willfully exploits an aged person ... by the improper or illegal use or management of the funds, assets, property, power of attorney, or guardianship of such aged person ... for profit, commits a felony of the third degree....
Section 415.102(3), Florida Statutes (1991):
"Aged person" means a person sixty years of age or older who is suffering from the infirmities of aging as manifested by organic brain damage, advanced age, or other physical, mental, or emotional dysfunctioning to the extent that the person is impaired in his ability to adequately provide for his own care or protection.
Section 415.102(9), Florida Statutes (1991):
"Exploitation" means, but is not limited to, the improper or illegal use or management of an aged person's or disabled adult's funds, assets, or property or the use of an aged person's ... power-of-attorney or guardianship for another's or one's own profit or advantage.
The trial courts focused upon the words "improper or illegal" to find section 415.111(5) unconstitutionally vague. The courts opined that the words failed to convey a sufficiently definite meaning to one who manages the funds of an aged person of what constitutes a violation of the statute. The courts below rhetorically asked: "When funds are being used or managed for investment how much tax liability, diversification, risk, liquidity, and income is proper or legal versus improper or illegal?" The trial courts also noted that no standards of management or investment nor standard jury instructions have been promulgated to suggest the conduct that would incur criminal liability.
The only reported case construing section 415.111(5) is a recent Second District case. In State v. Dyer, 607 So.2d 482 (Fla. 2d DCA 1992), the defendants were charged with grand theft and financial exploitation of an aged person pursuant to section 415.111(5) for using high pressure sales tactics or fraudulent schemes to convince aged victims to pay exorbitant prices for emergency response systems. The court affirmed the dismissal of the exploitation charges stating that while the "alleged sales conduct may be `exploitation' in a general sense ... it does not involve use or management of the aged persons's funds for profit."[1]Id. at 482. The Dyer *504 case did not involve the question of the statute's constitutionality.
We agree with the trial courts in the instant appeal that the legislature's choice of the word "improper" to describe the activity incurring criminal liability was poor. The use of the word in the statute does not provide a sufficiently definite warning of the proscribed conduct. A fiduciary of a protected person's assets who is paid for and renders services with the best of honest and faithful intentions could be exposed to prosecution under the statute for investment decisions or oversights that were later found to be unwise. We do not believe that the statute was meant to apply to those situations. The statute's use of the word "improper" leaves such fiduciaries and others "of common understanding and intelligence [guessing] at its meaning." State v. Rodriquez, 365 So.2d 157, 159 (Fla. 1978). We therefore agree with the trial courts that the word "improper" as it is used in this statute is unconstitutionally vague.
The appellees argue in support of the dismissals of the charges against them that the word "illegal" is also unconstitutionally vague, and they rely primarily on three cases: Rodriquez; Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102 (Fla. 1947); and K.L.J. v. State, 581 So.2d 920 (Fla. 1st DCA 1991). In Locklin, the supreme court found unconstitutionally vague a statute which made it unlawful for a public employee to act in a manner not authorized by law. The court noted:
Under the provisions of this Act, an officer or an employer is just as amenable to prosecution for an act done in good faith, when that act is not specifically authorized by law, as he would be for the commission of an act done with evil intent and willfully done in violation of the law. So the determination of a standard of guilt is left to be supplied by courts or juries. This is an unconstitutional delegation of legislative power.
30 So.2d at 103. In the instant case, the statute in question (excluding the word "proper") requires the performance of an illegal act for the purpose of profiting from it. Unlike the statute in Locklin, it does not proscribe acts which, while done in good faith, are not specifically authorized. The statute rather punishes only those who illegally use or manage an aged person's property with the intent of profiting from the violation.
In Rodriquez, the supreme court upheld a statute which made it a crime to use food stamps "in any manner not authorized by law." The court distinguished its earlier Locklin decision by noting that the term "in any manner not authorized by law" referred only to violations of state and federal food stamp law. The court found that the statute making it a crime to use food stamps in a manner not authorized by the food stamp laws was sufficiently definite to inform the defendant that his conduct in selling non-food items for food stamps was proscribed. In the instant case we find the law in question is sufficiently definite. It proscribes the illegal use or management of an aged person's funds with the intent to profit thereby.
The final case appellees rely on in arguing that the term "illegal" is vague is K.L.J. v. State, 581 So.2d 920 (Fla. 1st DCA 1991), in which the First District found a curfew ordinance for minors, which contained an exception for minors on "legitimate business," under the age of sixteen, to be unconstitutionally vague and over-broad. The term "legitimate business," however, cannot be fairly analogized to the word "illegal." Determining what constitutes "legitimate business," like determining what is "proper," involves essentially a subjective analysis which is likely to differ from person to person. The word "illegal", in contrast, involves the more objective criteria of any behavior that is proscribed by law. In Gates v. Chrylser Corp., 397 So.2d 1187, 1190 (Fla. 4th DCA 1981), the court defined "illegal act," as that term is used in section 320.64(4), Florida Statutes (1979), as an act that subjects one to criminal penalties. We view the use of the word "illegal" in section 415.111(5) in the same manner *505 and hold that one who commits a criminal act involving use or management of an aged person's funds with the purpose of profiting from the illegality is sufficiently put on notice that such conduct is proscribed by the statute in issue.

SEVERABILITY
It is the duty of this court when reasonably possible to construe a statute to avoid a conflict with the federal and state constitutions. Rodriquez, 365 So.2d at 158 ("When reasonably possible and consistent with protection of constitutional rights, [the supreme court] will resolve all doubts as to the validity of a statute in favor of its constitutionality."); Schultz v. State, 361 So.2d 416, 418 (Fla. 1978). In construing a statute as constitutional, the court cannot rewrite the statute. Neither are courts at liberty to supply deficiencies or undertake to make a vague statute definite and certain. State ex rel. Lee v. Buchanan, 191 So.2d 33, 36 (Fla. 1966). Courts have no power to define a crime differently than does the statute. Jackson v. State, 515 So.2d 394 (Fla. 1st DCA 1987), approved, 526 So.2d 58 (Fla. 1988).
While judicial rewriting is prohibited, offending or meaningless words in a statute have been excised to preserve the constitutionality of a statute. In State v. Reese, 222 So.2d 732 (Fla. 1969) the supreme court considered the constitutionality of Florida's obscenity statute, section 847.011, Florida Statutes, which denounced the sale or possession of "any obscene, lewd, lascivious, filthy, indecent, immoral, sadistic, or masochistic literature." The court was troubled by the inclusion of the word "immoral" in the statute since it had been previously held to be unconstitutionally vague. The court concluded:
The elimination of the word "immoral" would not interfere with the operation of the remainder of the statute, and it cannot be said that the legislature would not have enacted the statute had it known that this word would be deleted. Accordingly, the word "immoral" is severable and should be deleted.
Id. at 735.
The supreme court in Schmitt v. State, 590 So.2d 404 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1572, 118 L.Ed.2d 216, 60 U.S.Law Weekly 3674 (U.S.Fla. Mar. 30, 1992), affirmed the Fourth District's determination that section 827.071(1)(g), Florida Statutes (1987), was unconstitutionally overbroad. It refused, however, to follow the Fourth District which narrowed the statute by reading an element into it and instead adopted this district's remedy in State v. Tirohn, 556 So.2d 447 (Fla. 5th DCA 1990). That remedy was severance of the portion of the statute identified as being overbroad.
Both this court in Tirohn and the supreme court in Schmitt applied the four-part test of Cramp v. Board of Public Instruction of Orange County, 137 So.2d 828, 830 (Fla. 1962) in order to determine if unconstitutional subunits of the statute are severable. The Cramp test requires the following consideration:
When a part of the statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.
Waldrup v. Dugger, 562 So.2d 687, 693 (Fla. 1990) (quoting Cramp, 137 So.2d at 830).
We apply the Cramp test to section 415.111(5):
(1) Separation of unconstitutional provisions from the remaining valid provisions. We find that deletion of the words "improper or" from section 415.111(5) as well as section 415.102(9), when the latter *506 section is used for the purposes of defining the word "exploits" in the former, can clearly be separated from the remaining provisions with no effect.
(2) Accomplishment of legislative purpose. The legislative purpose of the section as well as Chapter 415, the Adult Protective Services Act, is set forth in section 415.101(2). The pertinent provisions of that subsection include an expression of legislative intent to provide for the detection and correction of exploitation of aged persons through criminal investigations. This intent is not thwarted by the deletion.
(3) Inseparability of good and bad features. The deletion has no effect upon this standard.
(4) Complete act. A complete act remains after the minor deletion that directly outlaws financial exploitation of the aged persons in a way that harmonizes with the Adult Protective Services Act.
After applying the Cramp test, we find that the word "improper" is severable from section 415.111(5) and should be deleted. Having done so, we construe the statute as proscribing unlawful acts involving the use or management of the funds, assets, property, power of attorney, or guardianship of aged persons in which there exists an intent to profit from the illegal act to the detriment of the targeted aged person. To be guilty of the crime, the perpetrator must be found to have violated another criminal statute but not necessarily charged with a violation of that statute.
We vacate the dismissals of the charges against the defendants and remand for further proceedings.
DISMISSALS VACATED; CAUSE REMANDED.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] We construe the use of the word "profit" in both Dyer and in the statute as relating to the motive or reason for the commission of the illegal act and not the management or use of the funds solely to create a profit for the benefit of the aged person.