639 So.2d 22 (1994)
James CUDA, Etc., Petitioner,
v.
STATE of Florida, Respondent.
No. 82203.
Supreme Court of Florida.
June 30, 1994.
Flem K. Whited, III, Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and Belle B. Turner and Kimberly D. Nolen, Asst. Attys. Gen., Daytona Beach, for respondent.
Kirk Kirkconnell, President, Winter Park, Robert Harper, Jr., Co-Chairman, Tallahassee and James T. Miller, Jacksonville, amicus *23 curiae on behalf of Florida Ass'n of Criminal Defense Lawyers (FACDL).
HARDING, Justice.
We have for review State v. Cuda, 622 So.2d 502 (Fla. 5th DCA 1993), in which the Fifth District Court of Appeal expressly declared section 415.111(5), Florida Statutes (1991), valid. We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. We quash the district court decision because we find that the statute is unconstitutional.
James Cuda was charged with one count of abuse of an aged person by exploitation in violation of section 415.111(5).[1] Cuda moved to dismiss the case on the ground that the statute was unconstitutionally vague. The trial court granted the motion finding that the adjectives "improper or illegal" created a constitutional vagueness problem.
On appeal, the Fifth District Court of Appeal reversed the order of the trial court and remanded for trial. The district court agreed with the trial court's view that the use of the word "improper" did not provide "a sufficiently definite warning of the proscribed conduct," and is thus unconstitutionally vague. 622 So.2d at 504. However, the district court stated that based on the definition of "illegal act" found in Gates v. Chrysler Corp., 397 So.2d 1187, 1190 (Fla. 4th DCA 1981), the use of the word "illegal" in section 415.111(5) is constitutional. 622 So.2d at 504-05. In Gates, the Fourth District Court of Appeal defined "illegal act" as an act that subjects one to criminal penalties. Using that definition, the Fifth District Court of Appeal held that "one who commits a criminal act involving use or management of an aged person's funds with the purpose of profiting from the illegality is sufficiently put on notice that such conduct is proscribed by the statute in issue." Id. at 505. The district court further found that the unconstitutional term "improper" was severable from the statute based on the four-part test in Cramp v. Board of Public Instruction, 137 So.2d 828, 830 (Fla. 1962).
This Court has approved statutes employing language similar to that used in the statute at issue here. In State v. Rodriquez, 365 So.2d 157 (Fla. 1978), this Court upheld a statute that contained a broad proscription against acts "not authorized by law." The statute at issue in Rodriquez provided that any person who "[u]ses, transfers, acquires, traffics, alters, forges, or possesses ... a food stamp ... in any manner not authorized by law is guilty of a crime." § 409.325(2)(a), Fla. Stat. (Supp. 1976) (emphasis added). This Court found that "because of the peculiar nature of the food stamp program, because it is a federal program, and because Chapter 409 gives notice that it is a federal program with federal regulations, we conclude that the Legislature, by the use of the language `not authorized by law' means not authorized by state and federal food stamp law." Id. at 159. Thus, the Court concluded that any constitutional notice problems were alleviated when the statute was read in conjunction with the rest of chapter 409, which refers to state and federal food stamp law. Id.
In contrast to Rodriquez, in Locklin v. Pridgeon, 158 Fla. 737, 739, 30 So.2d 102, 103 (1947), this Court found that a statute containing the phrase "not authorized by law" was "too vague, indefinite and uncertain to constitute notice of the crime or crimes or unlawful acts which it purports to prohibit" and "prescribes no ascertainable standard of guilt." The statute at issue in Locklin made it unlawful for any officer, agent, or employee of the federal government or the State of Florida to commit any act under color of authority of their position which is "not authorized by law." Id. This Court held that the act was unconstitutionally vague because it required every government employee and officer "to determine at his peril what specific acts are authorized by law and what are not authorized by law." Id., 30 So.2d at 105.
*24 The circumstances surrounding the instant case are more like Locklin than Rodriquez. Rodriquez had the federal laws as a backdrop, thus providing the requisite notice to make the statute constitutional. However, like Locklin, there are no other statutes in the instant case to lend meaning to the vague language employed in section 415.111(5). As in Locklin, this statute purports to criminalize any "illegal" act in using or managing the funds of an aged person. Further, section 415.111(5) also suffers from the same constitutional infirmities noted by this Court in Locklin. The statute violates due process because it is too vague to give notice. Furthermore, "the determination of a standard of guilt is left to be supplied by the courts or juries," which is "an unconstitutional delegation of legislative power." 158 Fla. at 739, 30 So.2d at 103.
This Court acknowledges that there are seven other states with similar statutes.[2] Four of these statutes, Louisiana, North Carolina, Texas, and Washington, define "exploitation" in the same manner as the Florida statute. However, there are critical differences between those statutes and section 415.111(5). None of the statutes with wording similar to Florida's inflict criminal sanctions. Those statutes deal primarily with the provision of protective services to elderly persons and the remedies available when neglect, abuse, or exploitation occur, including enjoining contact with the elderly person, requiring an accounting of funds, etc. Further, although several of the statutes do provide for criminal proceedings in accordance with existing law, they do not establish a separate criminal offense as does the Florida statute at issue here.
Illinois does impose criminal sanctions for the financial exploitation of an elderly person. However, the language of the Illinois statute is quite different from Florida's in that it specifically defines the conduct that is prohibited.[3] The Illinois statute provides that financial exploitation of an elderly person is a felony with the class of felony determined by the value of the property involved. The statute also clearly defines the terms "intimidation" and "deception" and explains who stands in a position of trust and confidence. See Ill. Ann. Stat. ch. 720, para. 5/16-1.3(b), (c) (Smith-Hurd 1993). Furthermore, the Illinois statute provides that a person who has made a good faith effort to assist an elderly person in the management of his *25 property, but through no fault of his own has been unable to provide such assistance, is not subject to criminal liability. Id. at para. 5/16-1.3(e).
In contrast, the Florida statute contains no clear explanation of the proscribed conduct, no explicit definition of terms, nor any good faith defense. Therefore, we find section 415.111(5) to be unconstitutionally vague.
Accordingly, we quash the decision below and remand for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW and KOGAN, JJ., concur.
McDONALD, Senior Justice, dissents.
NOTES
[1] Section 415.111(5), Florida Statutes (1991), provides:

A person who knowingly or willfully exploits an aged person or disabled adult by the improper or illegal use or management of the funds, assets, property, power of attorney, or guardianship of such aged person or disabled adult for profit, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] Conn. Gen. Stat. Ann. § 17a-430(4) (West 1992); Ill. Ann. Stat. ch. 720, para. 5/16-1.3 (Smith-Hurd 1993); La. Rev. Stat. Ann. § 14:403.2(5) (West 1994); N.C. Gen. Stat. § 131D-2(a)(4) (1993); Okla. Stat. tit. 43A, § 10-103(11) (1991); Tex. Hum.Res.Code Ann. § 48.002(3) (West 1990); Wash. Rev. Code Ann. § 74.34.020(5) (West 1994).
[3] The Illinois statute dealing with "[f]inancial exploitation of an elderly or disabled person," provides in pertinent part:

(a) A person commits the offense of financial exploitation of an elderly person when he stands in a position of trust and confidence with the elderly or disabled person and he knowingly and by deception or intimidation obtains control over the elderly or disabled person's property with the intent to permanently deprive the elderly or disabled person of the use, benefit, or possession of his property.
....
(b) For purposes of this Section:
....
(3) "Intimidation" means the communication to an elderly or disabled person that he shall be deprived of food and nutrition, shelter, prescribed medication or medical care and treatment.
(4) "Deception" means, in addition to its meaning as defined in Section 15-4 of this Code, a misrepresentation or concealment of material fact relating to the terms of a contract or agreement entered into with the elderly or disabled person or to the existing or pre-existing condition of any of the property involved in such contract or agreement; or the use or employment of any misrepresentation, false pretense or false promise in order to induce, encourage or solicit the elderly or disabled person to enter into a contract or agreement.
(c) For purposes of this Section, a person stands in a position of trust and confidence with an elderly or disabled person when he (1) is a parent, spouse, adult child or other relative by blood or marriage of the elderly or disabled person, (2) is a joint tenant or tenant in common with the elderly or disabled person or (3) has a legal or fiduciary relationship with the elderly or disabled person.
....
(e) Nothing in this Section shall be construed to impose criminal liability on a person who has made a good faith effort to assist the elderly or disabled person in the management of his property, but through no fault of his own has been unable to provide such assistance.
Ill. Ann. Stat. ch. 720, para. 5/16-1.3 (Smith-Hurd 1993).