680 So.2d 528 (1996)
Kenneth Michael WHITAKER, Appellant,
v.
DEPARTMENT OF INSURANCE AND TREASURER, Appellee.
No. 95-2702.
District Court of Appeal of Florida, First District.
June 13, 1996.
*529 James T. Miller of Corse, Bell & Miller, P.A., Jacksonville, for appellant.
David D. Hershel and Michael H. Davidson, Department of Insurance, Tallahassee, for appellee.
KAHN, Judge.
Appellant Kenneth Michael Whitaker challenges an order of the Department of Insurance which revokes his insurance licenses. Among the many issues he raises, Whitaker contends that the Department erred 1) in finding him guilty of failure to insure under section 626.9541(1)(x)4., Florida Statutes (Supp.1992), and 2) in finding that his conduct was detrimental to the public interest in violation of section 626.621(6), Florida Statutes (Supp.1992). Finding merit to these points, we reverse in part and remand for further proceedings.
Whitaker held licenses as a life agent, a life and health agent, and a general lines agent. He served as corporate president, director and registered agent of Emerald Coast Insurance Agencies, Inc. (Emerald Coast). Emerald Coast is a nonstandard automobile insurance agency which insures high risk drivers who normally have a difficult time procuring insurance. The violations which led to this disciplinary proceeding arose from the day-to-day operations of Emerald Coast.
The record shows that when an Emerald Coast customer could not pay the necessary insurance premium, Emerald Coast required a down payment and made premium financing available for the balance. In these instances, however, Whitaker required the customer to purchase a motor club membership and/or a separate death and dismemberment policy. Whitaker received a 90% commission from Atlantic Travel Association of North Florida, Inc. for the motor club memberships and a similar commission from American Travelers Association for death and dismemberment contracts.
Whitaker and his employees obtained customers' signatures on various documents *530 which listed the cost of the "ancillary product," and indicated that the motor club membership was optional. The customers in question testified they had not read the documents but instead relied upon the explanations of the salesmen. Some customers were not aware they had purchased an ancillary product, while others testified they believed it was all part of the financing agreement and were not aware of an additional fee.
Appellant used motor club contract forms from Emerald Coast's previous motor club, Atlantic Travelers Association, Inc., or forms listing the motor club as Atlantic Travelers Association. None of the motor club contract forms or acknowledgements used during the time in question listed the correct name, "Atlantic Travelers Association of North Florida, Inc."
The auto club contracts offered 38 different choices of benefit levels. These options were largely unknown to Emerald Coast's customers, however, because the salesmen selected a benefit level at their discretion and did not disclose the various levels available. Several customers testified they would not have purchased a towing benefit if the options had been explained.
Appellant took all or part of the cost of the ancillary product from the required premium down payment and gave the consumer a receipt which listed the full down payment as "Total Premium." The receipt did not reveal that part of the "premium" went to purchase an ancillary product. The practice of deducting the cost of the ancillary product from the down payment often caused Whitaker to require customers to make an additional down payment on the actual premium. In some cases, appellant would send letters and make phone calls requiring immediate payment of the additional down payment that day or threatening to cancel the "policy".
The Insurance Commissioner filed a nine count administrative complaint charging Whitaker with 140 violations of Chapter 626, Florida Statutes. The hearing officer assigned to the case found eight violations of section 626.9541(1)(x)4., and eight violations of section 626.621(6). She recommended that the Commissioner enter a final order suspending appellant's licenses for 13 months.
The Insurance Commissioner adopted the hearing officer's findings of fact and conclusions with exceptions. The final order found four violations of section 626.9541(1)(x)4. (refusal to insure), three violations of section 626.9541(1)(z)3. (lack of informed consent for sale of ancillary product), eight violations each of sections 626.621(6)(unfair methods of competition or unfair or deceptive acts or practices), 626.611(7) (lack of fitness/trustworthiness) and 626.611(9) (fraudulent or dishonest practices under license) and fifteen violations of section 626.9521 (unfair method of competition or unfair and deceptive act or practice). The Commissioner rejected the 13 month suspension in favor of revocation of appellant's insurance licenses. The purported violations of section 626.9541(1)(x)4. will not withstand our construction of the statute. The violations of section 626.621(6) must also fall because that statute is unconstitutionally vague.
Section 626.9541(1)(x)4., Florida Statutes (Supp.1992), provides:
626.9541 Unfair methods of competition and unfair or deceptive acts or practices defined.
(1) UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS.The following are defined as unfair methods of competition and unfair or deceptive acts or practices:
* * * * * *
(x) Refusal to Insure.In addition to other provisions of this code, the refusal to insure, or continue to insure, any individual because of:
* * * * * *
4. The insured's or applicant's failure to purchase noninsurance services or commodities, including automobile services as defined in s. 624.124....
Appellant contends that the hearing officer and the Commissioner abused their discretion in interpreting section 626.9541(1)(x)4. to find "Respondent's refusal to finance insurance premiums is equivalent to a refusal to insure, as proscribed by section 626.9541(1)(x)4." Appellant argues, and we find, that the statute is clear on its face. The *531 phrase "refusal to insure" is unambiguous and must be given its plain meaning. See Martin County v. Edenfield, 609 So.2d 27 (Fla.1992)(if a statute is clear and unambiguous, then a court should not construe the language of the statute); City of Jacksonville v. Nashid Properties, Inc., 636 So.2d 875 (Fla. 1st DCA 1994)(same). In plain terms the statute prohibits certain refusals to insure, but not refusals to finance.
Because the statute is penal in nature, it must be strictly construed with any doubt resolved in favor of the licensee. Taylor v. Department of Prof. Reg., Bd. of Medical Examiners, 534 So.2d 782, 784 (Fla. 1st DCA 1988); Elmariah v. Department of Prof. Reg., Bd. of Medicine, 574 So.2d 164, 165 (Fla. 1st DCA 1990)("Although it is generally held that an agency has wide discretion in interpreting a statute which it administers, this discretion is somewhat more limited where the statute being interpreted authorizes sanctions or penalties against a person's professional license. Statutes providing for revocation or suspension of a license to practice are deemed penal in nature and must be strictly construed, with any ambiguity interpreted in favor of the licensee."). Had the Legislature intended to include "refusal to finance" under this section, it could easily have done so. Section 626.9541(1)(x)4., however, fails to give notice that the practice of conditioning premium financing upon purchase of an ancillary product is a prohibited act. See Yes Dear, Inc. v. Department of Revenue, 523 So.2d 1235 (Fla. 1st DCA 1988). The violations of section 626.9541(1)(x)4. must be reversed.
Appellant also argues that because section 626.621(6) is unconstitutionally vague, the alleged violations under the statute may not stand. The enactment under review provides:
626.621 Grounds for discretionary refusal, suspension, or revocation of agent's, solicitor's, adjuster's, customer representative's, service representative's managing general agent's, or claims investigator's license or appointment.The department may, in its discretion, deny an application for, suspend, revoke or refusal to renew or continue the license or appointment of any applicant, agent ... and it may suspend or revoke the eligibility to hold a license ... of any such person, if it finds that as to the applicant, licensee, or appointee any one or more of the following applicable grounds exist under circumstances for which such denial, suspension, revocation, or refusal is not mandatory under s. 626.611: ...
(6) In the conduct of business under the license or appointment, engaging in unfair methods of competition or in unfair or deceptive acts or practices, as prohibited under part X of this chapter, or having otherwise shown himself to be a source of injury or loss to the public or detrimental to the public interest.
The hearing officer and the Commissioner found that appellant violated section 626.621(6) by "showing himself to be `detrimental to the public interest.'" We must determine whether the phrase "detrimental to the public interest" is too vague to constitute notice of what acts it purports to prohibit. Such a level of notice is the minimum requirement of due process. See Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (A reviewing court must find a statute unconstitutionally vague if the statute fails to give adequate notice or the requisite definite warning of what conduct is prohibited.).
The test for vagueness is whether the statutory language is sufficiently explicit to inform those who are subject to its provisions what conduct on their part will render them liable to its penalties and conveys a sufficiently definite warning of the proscribed conduct when measured by common understanding and practice. State v. Wershow, 343 So.2d 605, 609 (Fla.1977); Cuda v. State, 639 So.2d 22 (Fla.1994)(terms "improper" and "illegal" as used in statute making it a crime to financially exploit aged persons or disabled adults, were unconstitutionally vague). A court cannot amend a statute by construction in order to bring the statute within the fundamental law. Wershow, 343 So.2d at 607. A statute is not sufficiently definite if a person of common intelligence must speculate about the statute's meaning and be subject to penalty if the guess is *532 wrong. Id. at 608; See also D'Alemberte v. Anderson, 349 So.2d 164 (Fla.1977)(statute which placed at stake the loss of livelihood and professional reputation, though noncriminal, must meet at least minimal constitutional standards for definiteness). Here, the phrase "detrimental to the public interest" is subject to many interpretations. Moreover, the meaning of "public interest" is left to the fancy of the enforcing agency. We hold, therefore, that the language following the last "or" in section 626.621(6), Florida Statutes (Supp.1992), offends due process.
We affirm the Commissioner's findings as to the other statutory violations except to the extent that some of those violations are based on violations of sections 626.9541(1)(x)4. or 626.621(6). As to the appropriate penalty, the Commissioner determined that revocation of appellant's insurance agent licenses was warranted in part due to the "sheer number of statutory violations." The number of violations will be less as a result of today's partial reversal. On remand the Commissioner must reconsider the penalty and should take into account section 626.641(1)(a), Florida Statutes (a suspension period shall not exceed two years), and Rule 4-231.040, Florida Administrative Code ("The Department is authorized to find multiple grounds exist under sections 626.611 and 626.621 for disciplinary actions against the licensee based upon a single count in an administrative complaint based upon a single act of misconduct by a licensee. However,... only the violation specifying the highest stated penalty will be considered for that count.").
Accordingly, we AFFIRM in part, REVERSE in part, and REMAND the matter to the Commissioner for proceedings consistent with this opinion.
BARFIELD, C.J., and ALLEN, J., concur.