849 So.2d 417 (2003)
UNITED WISCONSIN LIFE INSURANCE COMPANY, Appellant,
v.
OFFICE OF INSURANCE REGULATION, Appellee.
No. 1D02-2980.
District Court of Appeal of Florida, First District.
July 11, 2003.
*418 John Radey, Elizabeth McArthur and Harry O. Thomas, of Radey Thomas Yon, P.A., Tallahassee, for appellant.
Michael H. Davidson and Miguel Oxamendi, Office of Insurance Regulation, Tallahassee, for appellee.
Rochelle Bobroff, AARP Foundation Litigation, Washington, DC; Bradley Winston, Plantation, Amicus Curiae for AARP.
Jeffrey M. Liggio, of Liggio, Benrubi & Williams, P.A., West Palm Beach; Edward Zebersky, of Zebersky & Payne, LLP, Hollywood; and Philip M. Burlington, of Caruso, Burlington, Bohn & Compiani, P.A., Amicus Curiae for Addison, et al.

REVISED OPINION
WOLF, C.J.
United Wisconsin Life Insurance Company (United Wisconsin or UW) a health insurance provider appeals from a final order of the Department of Insurance (DOI or Department)[1] finding it guilty of two counts of violation of the insurance code. We determine that the Department erred in rejecting the conclusion of the Administrative Law Judge (ALJ) that DOI failed to prove violations of the statutory provisions under which it charged United Wisconsin. We therefore reverse.
On May 10, 2001, DOI filed an administrative complaint against UW, alleging eight counts under various provisions of the insurance code. The counts involved UW policies offered through two separate entities: (1) Prescription For Good Health Trust (Trust) and (2) Taxpayers Network, Inc. (TNI). In September 1998 UW notified the Trust certificate holders that the Trust policies were being discontinued as of the 1999 renewal date. Each Trust member was given the opportunity to apply for membership and coverage through TNI. All eight counts of the administrative complaint were dismissed by the ALJ after a hearing, but the dismissal as to Counts V and VIII was overturned by DOI. Those two counts are at issue in this appeal.
*419 Count VIII alleged in pertinent part as follows:
45. United Wisconsin knowingly failed to provide the form required by Section 627.6675(17), Fla. Stat., to individuals who applied for the converted policy or otherwise requested such information from United Wisconsin or its duly appointed agents.
This charge was based on the failure to provide Ms. Shaneen Wahl notice of a conversion policy. The ALJ made the following factual finding as to this allegation:
[Ms. Wahl] never specifically asked for information about a conversion policy, because she had never heard that term (despite the notice of conversion privilege in her Trust certificate). This testimony falls short of clear notice to United Wisconsin that Ms. Wahl was considering applying for a conversion policy.
This finding of fact was supported by competent substantial evidence presented at the hearing. While the DOI accepted this finding of fact, it rejected the conclusion that United Wisconsin did not violate Count VIII of the charge. We determine that this finding of fact is dispositive of the alleged violation of Count VIII. We, therefore, determine that DOI erred in overturning the ALJ's dismissal as to Count VIII.
In Count V, DOI alleged that UW annually reevaluated the health status of the insureds, including claims history, within the same actuarial class. It further alleged that UW raised the premiums charged to some of those individual class members on the basis of that re-evaluation. DOI's position was that this annual reclassification from tier to tier (known as tier rating) constituted knowing and willful violations of the Florida Insurance Code. As to this count, DOI rejected certain findings of fact and conclusions of law of the ALJ and found UW guilty. Specifically, the DOI held in the Final Order,
3. In accordance with the modified Conclusions of Law, Respondent is found guilty of the following violations as alleged in the Administrative Complaint:
a) United Wisconsin violated Sections 626.9541(1)(g)2 and 627.6425, Florida Statutes, as alleged in Count V of the Administrative Complaint when in the year 2000 in connection with the renewal of the TNI association coverage it subjected individuals to rate increases which were not applicable to all members of the same class.
In determining the legality of DOI's determination as to Count V we are asked to look at three issues: 1) Whether the Department proved that section 626.9541(1)(g)2., Florida Statutes, prohibits tier rating by out-of-state group health insurers; 2) whether the Department could base its finding of a violation as to Count V on section 627.6425, Florida Statutes, where this statute was neither referenced in the charging document or addressed by the ALJ as to this particular count; 3) whether section 627.6425, Florida Statutes, prohibits tier rating by out-of-state group health insurers. We will address the first two issues, but because we find that DOI could not base a finding of guilt as to Count V on section 627.6425, Florida Statutes, we decline to address the third issue.[2] Section 626.9541 in pertinent part states,
*420 (1) UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS.The following are defined as unfair methods of competition and unfair or deceptive acts or practices:
....
(g) Unfair discrimination.
....
2. Knowingly making or permitting any unfair discrimination between individuals of the same actuarially supportable class and essentially the same hazard, in the amount of premium, policy fees, or rates charged for any policy or contract of accident, disability, or health insurance, in the benefits payable thereunder, in any of the terms or conditions of such contract, or in any other manner whatever.
(Emphasis added).
In Whitaker v. Department of Ins. and Treasurer, 680 So.2d 528 (Fla. 1st DCA 1996), this court held that section 626.9541 does not prohibit a practice which is not specifically delineated as "unfair" in the act or in the administrative code:
Because the statute is penal in nature, it must be strictly construed with any doubt resolved in favor of the licensee. Taylor v. Department of Prof. Reg., Bd. of Medical Examiners, 534 So.2d 782, 784 (Fla. 1st DCA 1988); Elmariah v. Department of Prof. Reg., Bd. of Medicine, 574 So.2d 164, 165 (Fla. 1st DCA 1990)("Although it is generally held that an agency has wide discretion in interpreting a statute which it administers, this discretion is somewhat more limited where the statute being interpreted authorizes sanctions or penalties against a person's professional license. Statutes providing for revocation or suspension of a license to practice are deemed penal in nature and must be strictly construed, with any ambiguity interpreted in favor of the licensee."). Had the Legislature intended to include "refusal to finance" under this section, it could easily have done so. Section 626.9541(1)(x)4., however, fails to give notice that the practice of conditioning premium financing upon purchase of an ancillary product is a prohibited act. See Yes Dear, Inc. v. Department of Revenue, 523 So.2d 1235 (Fla. 1st DCA 1988). The violations of section 626.9541(1)(x)4. must be reversed.
Id. at 531.
Several sections of the statutes regulating insurance expressly prohibit the use of claims experience or health status in determining whether to discontinue or renew health coverage. See, e.g., section 627.6425, Florida Statutes; section 626.6571, Florida Statutes; section 627.6699, Florida Statutes.[3] Section 626.9541(1)(g) does not contain the same *421 explicit language regarding renewals, health status, or claims history. DOI asserts, however, that the language contained in this statuteprohibiting discrimination between individuals of the same actuarially supportable class and essentially the same hazardnevertheless prohibits tier rating.
Neither the Florida Statutes nor Florida Administrative Code, however, defines "same actuarially supportable class" or "essentially the same hazard." In fact there has been relatively little case law directly dealing with this section. See, e.g., Dade County Consumer Advocate's Office v. Department of Ins., 457 So.2d 495, 499 (Fla. 1st DCA 1984), aff'd 492 So.2d 1032 (Fla.1986) (noting in dicta that allowing an agent to discount a portion of his commission to an individual purchaser without offering same to others would be considered an unfair method of competition or a deceptive act or practice under section 626.9541(1)(g)).
DOI attempted to define the terms "actuarially supportable class" and "essentially the same hazard" and to demonstrate that these terms prohibited tier rating through expert witnesses. The Department's argument depended on the interpretation that the status of parties can only be evaluated at the initiation of the policy rather than at renewal.
The ALJ did not accept the interpretation as presented by the Department's witnesses. She made the following findings, in pertinent part:
89. The Department agrees with United Wisconsin that for TNI coverage, the entire block of Florida business is the single "actuarially supportable class." (See Finding of Fact 60.) Frank Dino, agency representative and Chief Actuary for the Department, even conceded that the statutory term "actuarially supportable class" does not mean that all certificate holders must be charged the same premium and that there may be legitimate different premium levels within a class, based on how (and probably when) the insureds came into the class.
90. ... Mr. Dino believes that because some actuarial literature introduced at hearing states, or may be interpreted to mean, that the "same hazard" can only be assessed at the initiation of the policy and may not be reassessed during the life of the policy, that also means that the Florida Statute prohibits an out-of-state insurer from raising premiums based on health, in tiers within the single class, at annual renewal.
91. United Wisconsin's expert actuaries disagreed with Mr. Dino's actuarial opinion.
....
93. One of the so-called "professional standards" introduced by the Department is ambiguous. All of the professional literature is subject to interpretation. None of this literature has been adopted into a Florida statute or a rule of the Department which would apply to this case.
94. In May 2001, the Department circulated an official publication for insurance agents and adjusters throughout Florida. That document posed the question, "What kind of practices in use would be prohibited if Florida's rating *422 laws applied to out-of-state coverage?" (emphasis supplied.) It also gave the answer: "Tier rating, whereby carriers move your clients from the underwriting basis or class in which they were issued coverage to one that is of a lesser standard and subject to higher renewal rate." Although the date of this document means it could not have been relied upon by United Wisconsin in 1996-2000, the document still constitutes an admission of the Department that as of May 2001, it had no statutory authority over out-of-state insurers who tier rate. At a minimum, it demonstrates that Mr. Dino's opinion is not the only statutory interpretation within the Department.
The foregoing findings are supported by competent substantial evidence. Thus, the ALJ determined that the Department failed to prove that the actuarially supportable class enumerated in section 626.9541(1)(g)2., Florida Statutes, was frozen at the time of the initiation of the policy, and therefore, no violation of the statute was proven. We are constrained to agree with the conclusion that no statutory violation was proven. See Whitaker, 680 So.2d at 531.
Finally, we must determine the applicability of section 627.6425. Count V of the administrative complaint did not charge UW with a violation of section 627.6425, Florida Statutes. We agree with appellant that it was not given reasonable notice of the applicability of section 627.6425 to Count V.[4] Thus, a finding of a violation of this count could not be based on that statute. See Cottrill v. Department of Ins., 685 So.2d 1371 (Fla. 1st DCA 1996). We therefore decline to address whether that statutory provision prohibits tier rating by out of state group insurers.
Reversed.
ERVIN and VAN NORTWICK, JJ., concur.
NOTES
[1] Now known as Office of Insurance Regulation.
[2] While DOI made compelling policy arguments regarding why tier rating should be prohibited as to out-of-state group health insurers, as it is for instate insurers, it is not our job to determine this policy question. We may only review the legality of the finding of violation in this particular case.
[3] Section 627.6571(3)(a)3., Florida Statutes, in pertinent part states,

In exercising the option to discontinue coverage of this form ... the insurer acts uniformly without regard to the claims experience of those policyholders or any health-status-related factor that relates to any participants or beneficiaries covered or new participants or beneficiaries who may become eligible for such coverage.
(Emphasis added).
Section 627.6699, Florida Statutes, in pertinent part states,
(2) The purpose and intent of this section is to promote the availability of health insurance coverage to small employers regardless of their claims experience or their employees' health status, to establish rules regarding renewability of that coverage, to establish limitations on the use of exclusions for preexisting conditions, to provide for development of a standard health benefit plan and a basic health benefit plan to be offered to all small employers, to provide for establishment of a reinsurance program for coverage of small employers, and to improve the overall fairness and efficiency of the small group health insurance market.
....
(3)(j) "Guaranteed-issue basis" means an insurance policy that must be offered to an employer, employee, or dependent of the employee, regardless of health status, preexisting conditions, or claims history.
(Emphasis added).
[4] The hearing officer did not even address this statutory section in reference to Count V. The first time it was brought up was in the Department's exception to the recommended order.