**Opinion filed March 27, 2025**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-24-00024-CR & 11-24-00025-CR

_____

## EX PARTE SHARON MARIE TAFF

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause Nos. CR15676 & CR15675**

## O P I N I O N

Sharon Marie Taff was indicted in separate cause numbers for the offense of exploitation of an elderly individual.[1]  *See* TEX. PENAL CODE ANN. § 32.53 (West 2016).  In each case, Sharon filed an application for a pretrial writ of habeas corpus in which she challenged the facial constitutionality of Section 32.53, which provides

---

[1]Aaron Louis Taff is charged with identical offenses.  Like Sharon, he sought pretrial habeas relief in each case and has appealed the trial court's denials of his applications.  As with Sharon's appeals, we have today affirmed the trial court's orders in a separate opinion.  *See Ex parte Aaron Louis Taff*, Nos. 11-24-00026-CR & 11-24-00027-CR (Tex. App.—Eastland Mar. 27, 2025, no pet. h.).

in part, that a person commits an offense if "the person intentionally, knowingly, or recklessly causes the exploitation of a[n] . . . elderly individual." *Id.* § 32.53(b).[2] Specifically, Sharon asserted that the statute's definition of "exploitation"—which is "the illegal or improper use of a[n] . . . elderly individual, or . . . the resources of a[n] . . . elderly individual . . . for monetary or personal benefit, profit, or gain"—is unconstitutionally vague. *Id.* § 32.53(a)(2). The trial court denied Sharon's writ applications, and she appealed.

On appeal, Sharon contends that the trial court erred when it denied her writ applications because the challenged statute is "void for vagueness and is facially unconstitutional." Because we conclude that Section 32.53 is not unconstitutionally vague, we affirm the trial court's orders.

## I. *Standard of Review & Applicable Law*

A defendant may raise a facial challenge to the constitutionality of a statute that defines the offense charged through a pretrial application for a writ of habeas corpus. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014). A facial challenge attacks the meaning of the statute itself rather than the statute's application to the defendant. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). "Whether a statute is facially constitutional is a question of law that we review *de novo*." *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

A criminal law is unconstitutionally vague if it is not sufficiently clear to: (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited; and (2) establish determinate guidelines for law enforcement. *State v. Doyal*, 589 S.W.3d 136, 146 (Tex. Crim. App. 2019). It is a basic principle of due

---

[2]Section 32.53 incorporates the definition of "elderly individual" found in Section 22.04(c) of the Texas Penal Code, which defines an "elderly individual" as a person who is sixty-five years of age or older. PENAL § 22.04(c) (West Supp. 2024).

process that a statutory enactment is void for vagueness if its prohibitions are not clearly defined. *Wagner v. State*, 539 S.W.3d 298, 313 (Tex. Crim. App. 2018) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "A statute satisfies vagueness requirements if the statutory language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *Id.* at 314 (quoting *Jordan v. De George*, 341 U.S. 223, 231–32 (1951)).

To resolve a facial challenge to the constitutionality of a statute, we focus "on the language of the statute itself rather than how it operates in practice." *McGruder v. State*, 483 S.W.3d 880, 883 (Tex. Crim. App. 2016) (internal quotation marks omitted). We begin with the presumption that the challenged statute is valid, and that the legislature has not acted unreasonably or arbitrarily by enacting it. *Lo*, 424 S.W.3d at 14–15; *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (West 2013) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended."). Many statutes have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." *Robinson v. United States*, 324 U.S. 282, 286 (1945). Therefore, in the context of a vagueness challenge to a statute that does not regulate protected speech, a court should declare the statute unconstitutional only if it is impermissibly vague in all its applications. *Rosseau*, 396 S.W.3d at 557; *see also Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("[S]peculation about possible vagueness in hypothetical situations not before the

3

Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960))).[3]

It is the challenger's burden to establish that the statute operates unconstitutionally in every application. *Lo*, 424 S.W.3d at 15; *see also Ex parte Vasquez*, 605 S.W.3d 248, 251 (Tex. App.—Austin 2020, pet. ref'd) (citing *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011)). In our review, we make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Peraza*, 467 S.W.3d at 514.

## II. *Discussion*

Sharon's[4] void-for-vagueness challenge rests on the meaning of the undefined terms "illegal" and "improper." She contends that, because Section 32.53 does not define those terms, the statute fails to give proper notice as to what conduct is prohibited and encourages arbitrary and discriminatory enforcement. However, a statute is not unconstitutional merely because of its undefined terms. *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). Rather, a statute's words, phrases, or undefined terms are to be given their plain and ordinary meaning, read in the context in which they are used, and construed according to the rules of

---

[3]*But see Ex parte Jarreau*, 623 S.W.3d 468, 472 (Tex. App.—San Antonio 2020, pet. ref'd) ("[R]ecent decisions by the United States Supreme Court and the Texas Court of Criminal Appeals indicate that when a penal statute is challenged for vagueness it is unnecessary to establish that the statute operates unconstitutionally in all possible circumstances.") (citing *Johnson v. United States*, 576 U.S. 591, 602–03 (2015)); *Doyal*, 589 S.W.3d at 144. Traditionally, if the challenge does not concern the First Amendment, the challenger "must establish that the statute always operates unconstitutionally in all possible circumstances." *Rosseau*, 396 S.W.3d at 557. Since the Fourth Court of Appeals decided *Jarreau*, it has imposed the "no-set-of-circumstances standard." *See State v. Flores*, 679 S.W.3d 232, 247–48 (Tex. App.—San Antonio 2023, pet. ref'd). While we discuss the constitutional applications of Section 32.53, we reach our conclusion based on the statute's fair notice and guidance standards. *See Doyal*, 589 S.W.3d at 146.

[4]The record does not show, and we cannot ascertain, the relationship between Sharon and Aaron, i.e., spouses, siblings, cousins, etc.

4

grammar and common usage. *Wagner*, 539 S.W.3d at 314 (citing *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989)); *see also* GOV'T § 311.011(a); *Mason v. State*, 663 S.W.3d 621, 634 (Tex. Crim. App. 2022). We utilize this method of statutory construction unless the statutory language is ambiguous, or its plain meaning leads to absurd results that the legislature could not possibly have intended. *Wagner*, 539 S.W.3d at 306 (citing *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999)). We presume that every word, phrase, clause, and sentence should be given effect if reasonably possible. *Id.*

"Words defined in dictionaries and with meanings so well-known as to be understood by a person of ordinary intelligence are not considered vague and indefinite." *Mason*, 663 S.W.3d at 634. The term "illegal" is defined as "not according to or authorized by law," "unlawful," or "illicit." *Illegal*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/illegal (last visited Mar. 25, 2025). If an actor's conduct amounts to a separate offense under the Penal Code, such as theft as defined in Section 31.03, it logically follows that the actor's conduct is illegal. *See* PENAL § 31.03 (West Supp. 2024). The term "improper" is defined as "not in accord with propriety, modesty, good manners, or good taste," and "not in accord with fact, truth, or right procedure." *Improper*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/improper (last visited Mar. 25, 2025). In other sources, "improper" is defined as "not in accordance with accepted standards, especially of morality or honesty." *Improper*, OXFORD DICTIONARY OF ENGLISH (2d rev. ed. 2005). Synonyms for the term "improper" include words such as "inappropriate," "incorrect," and "wrong." *Improper*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/improper#synonyms (last visited Mar. 25, 2025).

Sharon attempts to distinguish Section 32.53 from other Texas statutes in which the term "improper" appears. *See* TEX. CODE CRIM. PROC. ANN. art. 1.052(b) (West 2005); art. 36.16 (West 2006). For instance, Sharon avers that Article 36.16, "is an example of a statute that draws a comparison between common law 'proper' closing arguments and 'improper' closing arguments." Yet, by this logic, Section 32.53 is just as precise—Article 36.16 neither explicitly refers to the judicially-created permissible scope of closing argument, nor does it further expand on the meaning of "improper." *See* CRIM. PROC. art. 36.16; *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim. App. 1980).

Equally unavailing is Sharon's reliance on *Cuda v. State*, 639 So. 2d 22 (Fla. 1994). In *Cuda*, the Florida Supreme Court held that the terms "improper or illegal" as used in the Florida statute that prohibited financial exploitation of an aged or disabled adult were unconstitutionally vague.[5] 639 So. 2d at 23–25. The court cited the lack of other statutes "to lend meaning to the vague language employed" in the statute at issue and compared the statute to other similarly worded laws from other states: Louisiana, Washington, Illinois, North Carolina, and Texas. *Id.* at 23–24. Since *Cuda*, other courts have distinguished it and upheld statutes that utilized the term "improper." *See, e.g.*, *State v. Sailer*, 684 A.2d 1247, 1249–50 (Del. Super. Ct. 1995) (distinguishing *Cuda* while discussing a similar statute that defined "exploitation" as "the illegal or improper use or abuse of an infirm person, his resources or his rights, by another person, whether for profit or other advantage.");

---

[5]The Supreme Court of Florida stated that the statute provided:

> A person who knowingly or willfully exploits an aged person or disabled adult by the improper or illegal use or management of the funds, assets, property, power of attorney, or guardianship of such aged person or disabled adult for profit, commits a felony of the third degree, punishable as provided in [Section] 775.082, [Section] 775.083, or [Section] 775.084.

*Cuda*, 639 So. 2d at 23 n.1 (quoting FLA. STAT. ANN. § 415.111(5) (West 1991)).

*see also Sanders v. City of Columbia*, 602 S.W.3d 288, 305 (Mo. App. W.D. 2020) ("[L]anguage prohibiting 'abusive or improper treatment' of a prisoner was not unconstitutionally vague or ambiguous, on its face or as applied."); *Foster v. State*, 937 So. 2d 742, 744 (Fla. Dist. Ct. App. 2006) (explaining that "the legislature's failure to define a statutory term, taken alone, does not render a provision unconstitutionally vague" and distinguishing *Cuda*). We, too, find *Cuda* distinguishable, as we are not without guidance from the legislature and our sister courts regarding the constitutional applications of Section 32.53.

In denying Sharon's writ applications, the trial court cited to *Cosper v. State*, 685 S.W.3d 196 (Tex. App.—Corpus Christi–Edinburg 2024, pet. ref'd), in which the Thirteenth Court of Appeals expressly applied the commonly understood dictionary definition of "improper." Sharon claims that the trial court's reliance on *Cosper* was erroneous because the definition of "improper" used in that case "is not dispositive as to the constitutionality of [Section] 32.53." Although *Cosper* is neither binding nor dispositive of the issue before us, we nevertheless find it to be instructive.

In *Cosper*, the court relied on one of the above dictionary definitions of "improper" in affirming a defendant's conviction for exploitation of an elderly individual. *Id.* at 204–06. Cosper met the victim, an eighty-six-year-old man with "'severe' dementia" and cognitive deficiencies, during her brief employment as the caregiver for the victim's wife. *Id.* at 204. In the months between Cosper's termination and the death of the victim's wife, the victim made several large cash withdrawals from a new bank account that he opened after meeting Cosper. *Id.* at 197–99. The evidence presented by the State showed that on one occasion, the victim withdrew $28,000, which Cosper used to buy a vehicle. *Id.* at 204. Sixteen days after the victim's wife died, Cosper and the victim married, and Cosper

7

subsequently sought to have the victim deemed incompetent and committed. *Id.* at 199, 205. The court concluded that based on Cosper's "overall course of conduct," including "attempting to liquidate [the victim's] investment account," becoming a beneficiary to his will, and being given his medical and general powers of attorney, the jury could have rationally concluded that Cosper intended to "*improperly influenc[e] [the victim]* in his diminished capacity at the time he provided her with the funds to purchase the vehicle." *Id.* at 204–05.

Other decisions that we have found further reinforce our conclusion that the meaning of "improper" in the context of Section 32.53 "conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Wagner*, 539 S.W.3d at 314 (quoting *Jordan*, 341 U.S. at 231–32); *see, e.g.*, *Paroline v. State*, 532 S.W.3d 491, 500–01 (Tex. App.— Texarkana 2017, no pet.). In *Paroline*, the defendant approached the victim in a convenience store and asked him to put gas in her car. 532 S.W.3d at 500. The victim was in his mid-thirties and had been diagnosed in his early childhood with autism, mental retardation, and developmental disorder, among other mental deficiencies. *Id.* at 499. The victim agreed to allow the defendant to use his debit card, but only authorized the defendant to purchase five dollars of gasoline. *Id.* at 500. The defendant filled her vehicle's gas tank instead, then used the victim's debit card to withdraw cash and make other unauthorized purchases. *Id.* at 499–500, 502. In finding the evidence sufficient to sustain the defendant's conviction for exploiting a disabled individual, the Sixth Court of Appeals explained:

> [Paroline] exploited [the victim's] trusting naivete by telling him that she was attempting to put money into his account, all the while making purchases and obtaining cash until the maximum limit of his card was reached. Once there was no more advantage in using the card, Paroline abandoned him in the early morning hours at the Texarkana Walmart, miles away from his home.

*Id.* at 502. The court concluded that a person of ordinary intelligence would deem intentionally "taking advantage of people, such as exploiting" the disabled victim in *Paroline*, as constituting the illegal or improper use of a protected individual's resources. *Id.* at 503.

In *Joles v. State*, the defendant entered an eighty-two-year-old woman's home uninvited and told her he would repair her roof. No. 05-19-01324-CR, 2020 WL 7053504, at *1–2 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op., not designated for publication). The victim did not know the defendant and told him to leave, but he refused. *Id.* Within the hour, the defendant convinced the victim to pay him $2,900 for repairs that he purportedly made to her roof, when the true value of any work performed was no more than $500. *Id.* at *1. On appeal, the defendant did not contest the sufficiency of the evidence to support his conviction, but instead only challenged the trial court's admission of a prior conviction. 2020 WL 7053504, at *1–2. The Fifth Court of Appeals affirmed the defendant's conviction for exploiting the elderly victim. *Id.* at *3.

Finally, in *Vidakovic v. State*, the defendant befriended his elderly neighbor, who was diagnosed with Alzheimer's and dementia. No. 01-18-00443-CR, 2019 WL 1388363, at *1, *5 (Tex. App.—Houston [1st Dist.] Mar. 28, 2019, no pet.) (mem. op., not designated for publication). As the victim's cognitive function declined, the defendant "asked [the victim] to fund various projects and business ventures" with the promise to repay him. *Id.* at *1. Over a two-year span, the victim issued checks to the defendant exceeding $41,000 without receiving any reimbursement. *Id.* At trial and on appeal, the defendant contested the evidence that he knowingly "defrauded [the victim] by taking advantage of [his] age and diminishing mental capacity." *Id.* at *1–2. The defendant was convicted of the

exploitation of an elderly individual and theft, and the First Court of Appeals affirmed his convictions. *Id.* at *1, *6.

Though the above cases do not conclusively establish the constitutional validity of Section 32.53, these cases illustrate the intrinsic understanding of criminal impropriety in the context of exploitation. In *Paroline* and *Vidakovic*, the disputes concerned evidence that showed the victim was disabled during the relevant timeframe. *Paroline*, 532 S.W.3d at 497–98; *Vidakovic*, 2019 WL 1388363, at *3. In *Cosper*, the defendant asserted that the State failed to prove that she improperly used the victim's resources because there was no evidence of who made the cash withdrawals, for what purpose(s) the funds were used, and that the funds were not community property. 685 S.W.3d at 203–04, 206. Based on the foregoing, we conclude that persons of ordinary intelligence would understand the unassailable criminal impropriety of obtaining a protected individual's assets through some form of dishonesty, manipulation, deceit, coercion, or misrepresentation, or by otherwise taking advantage of the protected individual. *See Wagner*, 539 S.W.3d at 314. What constitutes "illegal or improper" conduct under Section 32.53 is also guided by the presumed knowledge of persons of ordinary intelligence.[6]

Section 32.53's scienter requirement focuses, in part, on the actor's intentional deceit or dishonesty to obtain the assets of the protected individual. PENAL § 32.53(a)(2), (b) (a person commits an offense if he or she *intentionally, knowingly, or recklessly* causes the exploitation—the illegal or improper use of an elderly individual or his or her resources *for monetary or personal benefit, profit, or gain*— of an elderly individual). Such a determination is necessarily fact-driven, and any

---

[6]While we are careful not to "engage in a free-floating extratextual inquiry to determine what [the] statute probably means," it is axiomatic that citizens are expected to know and abide by the law. *Doyal*, 589 S.W.3d at 149; *see* PENAL § 8.03(a) (West 2021) (ignorance of the law is not a defense).

"practical difficulty a factfinder may have in ascertaining intent does not render a law unconstitutionally vague." *See Ex parte Ellis*, 309 S.W.3d 71, 89 (Tex. Crim. App. 2010). Rather, if the State fails to prove the necessary culpable mental state, then a defendant charged under this provision would be entitled to an acquittal. *Id.* at 90 (concluding that provisions of the Election Code are not facially unconstitutional due to vagueness). And although "[c]lose cases can be imagined under virtually any statute," whether a defendant obtained a benefit from the protected individual through dishonesty or deceit is a "true-or-false determination" that may be made by the factfinder. *See Williams*, 553 U.S. at 306 ("The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.").

"[T]he law is full of instances where a man's fate depends on his estimating rightly [to] some matter of degree." *Johnson v. United States*, 576 U.S. 591, 604 (2015) (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)). "[C]ourts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred." *Williams*, 553 U.S. at 306 (quoting *American Communications Assn. v. Douds*, 339 U.S. 382, 411 (1950)). "[T]o the extent that the statute is applied overzealously and unrealistically so as to charge an innocent [person]" with exploiting a protected individual, as Sharon suggests, such application may be challenged post-conviction on direct appeal through an "as applied" challenge. *See Ex parte Barrett*, 608 S.W.3d 80, 96 (Tex. App.—Dallas 2020, pet. ref'd) (citing *United States v. Thompson*, 896 F.3d 155, 168 (2nd Cir. 2018)); *see Broadrick v. Oklahoma*, 413 U.S. 601, 615–16 (1973) ("[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.").

We conclude that the improper use of a protected individual or the individual's resources under Section 32.53, when read in proper context, is not "such a non-numeric," "imprecise 'qualitative standard'" that would lead to unpredictable, arbitrary enforcement. *See Sessions v. Dimaya*, 584 U.S. 148, 159–162 (2018) (quoting *Johnson*, 576 U.S. at 603–04). Thus, because Section 32.53 provides fair notice of the prohibited conduct to persons of ordinary intelligence and adequate guidance to law enforcement, it is neither void for vagueness nor facially unconstitutional as Sharon suggests. Accordingly, we overrule Sharon's issues on appeal.

## III. *This Court's Ruling*

We affirm the orders of the trial court.


W. STACY TROTTER

JUSTICE


March 27, 2025

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.